THE POSTAL TELEGRAPH-CABLE COMPANY

*v.*

WILLIAM E. LIKES.

*Opinion filed February 21, 1907.*

1. VARIANCE—*in actions ex delicto plaintiff need not prove all the allegations.* In actions *ex delicto,* if the plaintiff proves enough of the material allegations of the declaration to make out a cause of action he is entitled to recover, notwithstanding there are other averments of the declaration which the evidence does not sustain.

2. MASTER AND SERVANT—*duty of a telegraph company to warn lineman of danger.* Although the duty of inspection of wires and poles with which a lineman is working may ordinarily be upon him where his knowledge or previous experience is such that he may know and appeciate the danger to which he is exposed, yet if his employer knows, or has reason to know, of unusual danger which is of such a nature that the lineman may not understand it, the employer owes the lineman the duty of warning him.

3. SAME—*master cannot rely on assumption that a servant will appreciate latent dangers.* A master cannot rely upon the assumption that his servant, being a man of average intelligence, will recognize and appreciate latent dangers which cannot be discovered by ordinary inspection and of which the servant has no knowledge.

4. SAME—*foreman's knowledge is the knowledge of the master.* A foreman employed by a telegraph company and engaged in superintending the stringing of wires is the representative of the company in such undertaking, and his knowledge is the knowledge of the company.

5. SAME—*when lineman should be warned of danger from uninsulated feed wires.* Where a telegraph company's foreman knows

that the wires which are to be strung by his lineman are to be placed upon poles where an electric railway has placed uninsulated feed wires in a position below the telegraph wires but of similar appearance to them, and knows that the lineman is ignorant of the facts, it is his duty to warn the lineman of the presence of the feed wires, and his breach of such duty will render the company liable for the resulting injury to the lineman.

6. SAME—*what is necessary to relieve the master from duty of warning servant of danger.* To relieve a master from the duty of warning his servant of a danger, the servant's opportunity of knowing and appreciating the danger must have been equal to or better than the master's, and the danger must be such as might have been discovered by the servant, with the knowledge shown to have been possessed by him, by ordinary inspection.

7. SAME—*what is not ordinary risk of the employment.* Danger from uninsulated feed wires attached.to a pole below telegraph or telephone wires, and appearing to be ordinary telephone or telegraph wires and harmless, is not an ordinary risk incident to the employment of a lineman engaged in stringing telegraph wires.

8. TRIAL—*right of defendant, who offers no evidence, to cross-examine witnesses of co-defendant.* A defendant corporation which has announced its intention, at the close of the plaintiff's evidence, to abide by its motion for a peremptory instruction, which had been denied, may be permitted to cross-examine witnesses testifying for the other defendant, but by so doing it authorizes the court and jury, in determining whether a case has been made against it, to consider the evidence introduced by the other defendant as well as that introduced by the plaintiff.

9. SAME—*judgment against one defendant may be given though the verdict finds joint liability.* Under a declaration in an action *ex delicto* charging joint negligence and a verdict finding joint liability the plaintiff may dismiss his suit as to one defendant and take judgment against the other, and the defendant against whom the judgment was rendered cannot complain that the course pursued was irregular.

10. EVIDENCE—*when answer of witness need not be stricken out.* In an action by a servant for injuries, where the declaration alleges that plaintiff has been rendered impotent for the rest of his life and the evidence tends to show that fact, it is not error to refuse to strike out the plaintiff's statement that his virility was "almost entirely gone," made in answer to his attorney's question, there being evidence that up to the time of his injury the plaintiff was in perfect health.

11. SAME—*when proof that plaintiff was the father of one child is proper.* Proof that the plaintiff in a personal injury case was

the father of one child is properly admitted as tending to show the plaintiff had virility before he was injured, where it is claimed that he has been rendered permanently impotent by the injury, provided such proof be properly restricted to that point and not considered upon the question of damages; nor can defendant complain of plaintiff's answer that his child was dead, where there was no objection to the question and no motion to strike out the answer.

12. SAME—*when village ordinance is not admissible.* And ordinance requiring an electric railway to maintain guard wires above the electric wires where the wires of other companies were suspended above them, is not admissible in an action against a telegraph company for injuries received by a lineman in its employ coming in contact with an uninsulated and unguarded feed wire of such railway company, where the offered evidence is not accompanied by any promise to show that the telegraph company relied upon compliance by the railway company with the ordinance.

CARTWRIGHT, HAND and CARTER, JJ., dissenting.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. LOCKWOOD HONORE, Judge, presiding.

This was an action of case, originally brought in the circuit court of Cook county on February 25, 1902, by William E. Likes, the appellee, against the Chicago and Milwaukee Electric Railway Company (hereinafter referred to as the railway company) to recover damages for a personal injury sustained by Likes on November 4, 1901. On April 8, 1902, the Postal Telegraph-Cable Company (hereinafter referred to as the postal company) was joined as a defendant, and thereafter, on May 9, 1902, a declaration was filed against both defendants as joint tort feasors. Demurrers were interposed and sustained to this declaration and to two amended declarations subsequently filed. On October 2, 1903, the plaintiff filed a third amended declaration, to which the defendants interposed separate pleas of not guilty. A trial was had before a jury, and a verdict was returned finding both defendants guilty and assessing the plaintiff's damages at $25,000. Both defendants

moved for a new trial. The motion of each was denied. Appellant then made a motion in arrest of judgment, which was overruled, and on motion of the plaintiff judgment was rendered on the verdict against the postal company alone. The plaintiff thereupon dismissed the suit as to the railway company. The postal company appealed to the Appellate Court for the First District, and that court having affirmed the judgment of the circuit court, a further appeal has been prosecuted by the postal company to this court.

The declaration filed on October 2, 1903, consisted of three counts. Each count alleged that on November 4, 1901, the postal company owned and operated lines of telegraph wires and poles in and through the county of Lake, in the State of Illinois, and the railway company owned and operated a line of electric railway in said county, together with wires and poles for the transmission of electricity used in operating its cars upon such railway. Each count also alleged that on said date the postal company was, with the knowledge and consent of the railway company, engaged in stringing and attaching certain wires to and upon a certain arm attached to a certain pole, which said arm and pole were owned by the railway company and were situated on or near Waukegan avenue, near the guard house at Fort Sheridan, in Lake county, Illinois. All of the counts alleged that attached to another arm on this pole were three uninsulated wires belonging to the railway company, which wires were transmitting a dangerous current of electricity; that plaintiff was in the employ of the postal company as a lineman, and that while ascending said pole, in the exercise of due care, for the purpose of stringing and attaching telegraph wires for his employer to the first above mentioned arm of said pole, he came in contact with the said wires of the railway company. The second and third counts allege that both defendants knew, or might have known by the exercise of due care, that the three wires of the railway company were heavily charged with electricity, exposed, uninsulated and

dangerous, but that such fact was unknown to the plaintiff. Neither this nor any similar allegation is contained in the first count.

The negligence charged in the first count is, that the defendants, and each of them, failed to furnish plaintiff a safe place in which to do his work and failed to warn plaintiff of hidden and unseen dangers incident to his work, whereby he came in contact with the feed wires of the railway company, and that the defendants, and each of them, failed to insulate the wires last aforesaid or otherwise protect and warn plaintiff of the danger of coming in contact therewith. The second count charged that the foreman of the postal company, who was in authority over plaintiff, carelessly and negligently ordered plaintiff to ascend the pole for the purpose of stringing and attaching wires to the arm of the pole, and that the railway company knew, or might have known, that said foreman would order plaintiff to ascend said pole for the purpose aforesaid, and that the defendants, and each of them, carelessly and negligently failed to insulate said wires of the railway company or otherwise protect and warn plaintiff of the danger of coming in contact with them. The third count charged negligence against the defendants in failing to have the pole stenciled or to have signs of danger on said arm or pole so as to warn plaintiff of the danger, and in failing to insulate the wires or otherwise protect or warn plaintiff of the danger arising from those wires. Each count contains an allegation that by and in consequence of the joint and concert careless and negligent conduct of the defendants, as set forth in the count, the plaintiff was injured.

The evidence showed that on the morning of November 4, 1901, Likes, with Johnson, Weaver and Donnelly, in charge of a foreman named McLaughlin, all in the employ of the postal company, went from Chicago to Fort Sheridan to string two telegraph wires from appellant's main line of wires on the west side of Waukegan avenue into the

Fort Sheridan grounds. Waukegan avenue is a public highway extending north and south along the west side of Fort Sheridan. The poles upon which these wires were to be placed were three in number, extending east from Waukegan avenue in a straight line, and had been there for some time. Each bore a cross-arm near the top capable of furnishing support for ten wires, each cross-arm having ten pins to which wires could be fastened. Part of the pins on these cross-arms were being used by the Chicago Telephone Company for telephone wires, and it was appellant's purpose to string its two wires and attach them to other pins on the same cross-arm. The most westerly of the three poles was on the line between Waukegan avenue and Fort Sheridan, and it was upon this pole that Likes received his injuries. The pole had been placed there by employees of the Chicago Telephone Company in 1898, and it was owned by that company or by the Chicago and Milwaukee Telegraph Company. It was numbered 654 and will be hereinafter referred to by that number.

On and prior to the day Likes was injured the railway company owned and operated an electric railway which ran north and south upon Waukegan avenue past Fort Sheridan. The cars were propelled by electricity transmitted over a trolley wire which was suspended above the highway upon poles. The power house of the railway company was located two or three blocks south of the last mentioned pole, and three feed wires, conveying electricity to be transmitted to the trolley wire at points further north, extended north from the power house and were attached to poles on the east side of Waukegan avenue. These feed wires were the same in appearance and size as the copper wire ordinarily used for telegraph and telephone purposes. They were uninsulated and were transmitting 5500 volts of electricity, and would cause serious injury or death to any person coming in contact with them. They had been attached to an arm on pole No. 654 several feet below the top, about

four months after the erection of that pole. No sign or other mark showing the dangerous character of these wires was upon the pole on the day Likes was injured. The cross-arm to which the telephone wires were attached and to which appellant's wires were to be fastened was above the feed wires and near the top of the pole.

Likes and Johnson were the only climbers among the men sent by appellant to Fort Sheridan on the morning of November 4, 1901. Weaver and Donnelly were there to uncoil the wire for the climbers and McLaughlin was the foreman in charge of the work. Upon their arrival at Fort Sheridan McLaughlin told Likes and Johnson upon what poles they were to string the wires and to which pins on the cross-arms the wires were to be fastened. The method used in stringing wires where there were two climbers, as in this case, was for the men to climb alternate poles. The plaintiff testified that McLaughlin gave the order to climb the poles in such a manner as to indicate that Likes was to ascend the first pole, Johnson the second pole and Likes the third pole, being pole No. 654. McLaughlin directed Likes and Johnson to start with the most easterly of the three poles, being in the Fort Sheridan grounds, and gave the ends of the wires to Likes, who thereupon ascended that pole and placed the wires in position. McLaughlin remained with Weaver and Donnelly, while Likes and Johnson proceeded to the second pole. After Johnson had placed the wire upon the second pole and had descended to the ground there was a short delay, caused by the wires becoming tangled in uncoiling. McLaughlin, who was assisting Weaver and Donnelly in straightening out the tangle, finally called to Likes and Johnson that it was all right and to "go ahead." Likes then took the ends of the two wires and started up pole No. 654. In ascending to the cross-arm on which the foreman had directed him to place the wires he was obliged to pass between the electric railway feed wires, and it was therefore necessary for him to reach out from the pole in

order to pass the wires which he was carrying, outside and over the feed wires, and in doing so his arm came in contact with one or more of the feed wires and he received the current of electricity into his arm and body. He fell backwards, freeing himself from the feed wires, and his belt caught on one of the iron steps of the pole, where he hung until he was taken down by his fellow-workmen. He was seriously injured by being burned and shocked by the feed wire or wires with which he came in contact.

McLaughlin testified that he made no inspection of pole No. 654 nor the wires on it; that he paid no attention to what was on the pole before the accident, and that he did not tell Likes or Johnson anything about feed wires being upon the pole or in the highway. McLaughlin had been foreman for the postal company for fourteen years, and in 1901 had charge of all work connected with stringing wires and putting in offices within a radius of one hundred miles from Chicago, which would include the place where this work was being done. He testified that he knew what a feed wire was, and that it was not insulated outside of a city; that he knew there were feed wires used in connection with the railway company's line and knew there were high tension electric wires running along Waukegan avenue, and learned when Likes was injured that those wires were attached to pole No. 654. The evidence tends to show that about a year before the accident to Likes, McLaughlin had been told of the death of a lineman caused by coming in contact with feed wires of the railway company four or five blocks south of the place where Likes was injured, and that he was then told that if he ever had any work to do up there he had better look out for those wires.

Likes was thirty-five years old at the time he was injured and had been working for appellant as a lineman for nearly three years. He had worked at Fort Sheridan on the Saturday preceding the accident, but not in the vicinity of the railway feed wires, and that was the only day, with

the exception of the day on which he was injured, that he had ever worked at Fort Sheridan. He testified that he did not know that there were live wires running along there and that he received no warning or notice of their presence; that there were no signs upon the pole indicating the dangerous character of the wires; that he had previously worked on poles upon which there were other wires besides telegraph wires but had no previous experience with high tension wires; that he had frequently worked around electric light systems in Chicago, but that the wires in those systems were insulated.

The evidence shows that it is the practice of those engaged in placing electric wires to string wires carrying dangerous currents of electricity above all other wires, and that when a lineman sees a wire fastened below telegraph or telephone wires it is an indication that such wire is not dangerous. It was also shown that all other poles to which these feed wires were attached contained a sign on which was printed a warning that the wires were dangerous.

Immediately after the plaintiff had rested his case, and again at the close of all the evidence, appellant presented to the court a written motion to exclude from the jury all evidence which in anywise affected the postal company, and to instruct the jury to find the postal company not guilty. The motion was denied and the instruction accompanying it refused in each instance.

The errors relied upon for reversal are: (1) The refusal of the peremptory instruction at the close of all the evidence; (2) permitting counsel for the railway company to cross-examine appellant's witnesses and to comment upon the evidence of these witnesses in his argument to the jury; (3) entering judgment against appellant alone upon a verdict finding both defendants guilty and under a declaration charging joint negligence; (4) admitting improper evidence on behalf of plaintiff and excluding evidence offered by appellant; and (5) errors in giving and refusing instructions.

225—17

LOESCH BROS. & HOWELL, (F. J. LOESCH, and C. LE-ROY BROWN, of counsel,) for appellant.

WATERS & JOHNSON, TINSMAN, RANKIN & NELTNOR, and H. B. SHERMAN, (JOEL BAKER, of counsel,) for appellee.

Mr. CHIEF JUSTICE SCOTT delivered the opinion of the court:

It is first urged that the court erred in refusing to direct a verdict for appellant at the close of all the evidence. The reasons assigned in support of this contention are, first, that the evidence failed to establish the existence of any duty on the part of appellant charged by the declaration to have been violated; second, that the plaintiff assumed the risk of injury from the feed wires; and third, that there was a fatal variance between the declaration and the proof as to the ownership of the pole and as to the charge of joint negligence.

In regard to the first of these reasons, there are several distinct breaches of duty alleged in each count. The first count charges that the defendants failed to furnish plaintiff a safe place in which to work, that they failed to warn him of hidden dangers, and that they failed to insulate the feed wires or otherwise protect and warn plaintiff of the danger of coming in contact with those wires. Proof of facts from which the law would impose a duty upon appellant to furnish a safe place in which to work, or to warn plaintiff of hidden dangers incident to his work, or to insulate the feed wires, and proof of a violation of either of those duties, would be sufficient proof of negligence on the part of appellant under this count. In actions *ex delicto* it is not necessary that the plaintiff prove all the material allegations of his declaration. If he prove enough of the material allegations to make out a cause of action he is entitled to recover, even though there are other averments of the declaration which

are not proved. (*Louisville, New Albany and Chicago Railway Co.* v. *Shires,* 108 Ill. 617; *City of Rock Island* v. *Cuinely,* 126 id. 408.) The second count is in the same condition as the first, in that it contains more than one charge of negligence. It counts upon a negligent order by appellant's foreman and upon a failure to insulate the feed wires. In the view we take of this case it will only be necessary to consider the first count in the light that it charges a duty upon appellant to warn plaintiff of hidden dangers, and the second count in so far as it alleges that the foreman gave plaintiff a negligent order.

We deem it apparent from the evidence, the substance of which is contained in the statement of facts preceding this opinion, that appellant's foreman, McLaughlin, had far more reason than had Likes to anticipate the presence of feed wires upon the pole in question. Had Likes known that uninsulated feed wires were being used by the railway company in connection with its railway along Waukegan avenue, and that these wires had caused the death of a lineman, at a place on the same avenue only a few blocks south, on account of being in close proximity to other wires, it is reasonable to believe that he would have avoided contact with these wires even though he did not certainly know that they were charged with a dangerous current of electricity. His testimony, however, shows that he had never worked in the vicinity of Fort Sheridan except on the Saturday preceding the injury, and then not near the highway, and was not familiar with this pole or its surroundings, and that he did not know of the presence of feed wires along the highway; that all high tension wires around which he had previously worked had been insulated; that these feed wires had the appearance of ordinary telegraph or telephone wires, and the evidence shows that their location on the pole, at a point below the arm carrying telephone wires, would indicate to a lineman that they were either telegraph or telephone wires, and harmless.

Although the duty of inspection of wires and poles upon and around which a lineman is working may ordinarily be upon such lineman where his knowledge or previous experience is such that he may know and appreciate the danger to which he is exposed, yet where the master knows of peculiar and unusual dangers which a lineman will encounter in the performance of certain work or has reason to anticipate the presence of such danger, and the danger is of such a nature that the servant, from lack of knowledge, may not appreciate or understand it, the master owes the servant the duty of warning him of such danger. (4 Thompson's Commentaries on the Law of Negligence, sec. 4118.) The master's duty in each case must necessarily depend upon the ability of the servant to recognize and appreciate the danger which he will encounter in the performance of his work, and the master can not act upon the assumption that the servant, being a man of average intelligence, will recognize and appreciate latent and hidden dangers which cannot be discovered by ordinary inspection and of which the servant has no knowledge.

McLaughlin, in directing and superintending the stringing of these wires, was the representative of appellant and his knowledge was the knowledge of appellant. (*Consolidated Coal Co. v. Wombacher*, 134 Ill. 57.) Appellant therefore knew that the wires were to be placed upon poles upon and around which the plaintiff's employment had not before that time required him to work, and that the plaintiff was therefore necessarily ignorant of any peculiar or unusual danger which might be encountered in ascending the pole. It knew that the railway company was using uninsulated feed wires in connection with its railway along Waukegan avenue, and that those wires, at a point on the highway a few blocks south of the place where plaintiff would be required to work, had been placed in such close proximity to other wires as to cause the death of a lineman working on such other wires. Its knowledge was such that by the exercise of reasonable care for the safety of its servants it

might have known of the dangerous character of the feed wires upon the pole, and in such case the law will impute and infer notice to it of their presence and dangerous character, (*Consolidated Coal Co.* v. *Haenni*, 146 Ill. 614,) but the plaintiff's knowledge and previous experience were not such that he might know or appreciate the danger to which he was then exposed. Under these circumstances we cannot say that the evidence did not tend to establish the existence of a duty on the part of appellant to warn plaintiff of the danger arising from the presence of the feed wires upon the pole. We are also of the opinion that there was evidence from which the jury might find that appellant, through its foreman, was negligent in ordering the plaintiff to ascend the pole without informing him of the danger to which he might be exposed.

The cases cited by appellant holding that the duty of inspection rests with the servant and that the master is therefore under no duty to warn the servant, are cases where the injured servant had an equal opportunity with, or better opportunity than, the master of knowing and appreciating the danger to which he was exposed, and the danger was such as might have been discovered by the servant, with the knowledge shown to have been possessed by him, by ordinary inspection. Those cases are in these respects distinguishable from the one at bar.

It is next urged that the plaintiff assumed the risk of the danger from which he was injured. A servant only assumes the ordinary risks incident to his employment and such dangers as are obvious and apparent. Danger from feed wires attached to a pole at a point below telegraph or telephone wires was shown not to be one of the ordinary risks incident to plaintiff's employment. In their position below the telephone wires they constituted an unusual risk, which was not incident to the employment of a lineman engaged in stringing telegraph wires. Neither was the danger obvious or apparent. The wires appeared to be ordinary

telephone or telegraph wires, and harmless, and their dangerous character would not appear by ordinary inspection.

The last reason urged in support of the contention that the court should have directed a verdict for appellant is, that there was a fatal variance, in that each count alleged that the pole on which plaintiff was injured was owned by the railway company, that appellant was engaged in stringing and attaching its wires to an arm on that pole with the knowledge and consent of the railway company, and that the injury occurred by reason of the joint and concert negligence of the two defendants; while the evidence showed that the railway company was not the owner of the pole and did not know that appellant was engaged in stringing wires thereon, and no joint and concert negligence was established against the defendants.

The evidence tended to establish a cause of action against the postal company under each of the first and second counts of the declaration without proof of either of the allegations mentioned in the foregoing paragraph. So far as that company was concerned, the evidence tended to show it guilty of negligence charged by the *narr.,* no matter to whom the pole belonged, and without regard to whether the negligence of another company contributed to the injury or whether such other company knew that it was engaged in stringing wires upon the pole in question. These allegations not being essential to the cause of action against appellant, it was therefore unnecessary to prove them, and it was immaterial if the evidence disproved them. (*Louisville, New Albany and Chicago Railway Co.* v. *Shires, supra; City of Rock Island* v. *Cuinely, supra; Swift & Co.* v. *Rutkowski,* 182 Ill. 18.) The declaration alleged the presence of apparently harmless, uninsulated wires upon a pole which it became necessary, in the performance of his duties as a lineman in the employ of appellant or in obedience to an order of his foreman, for the plaintiff to ascend, and that while, in the performance of such duties or in obedience to such

order, he was ascending the pole with due care, he came in contact with the apparently harmless, uninsulated wire and was injured. Proof of these allegations, together with proof that appellant knew, or could have known by exercising ordinary care, of the existence of these wires and their dangerous character, and that the plaintiff was ignorant of such existence and character and did not have equal opportunity with appellant to ascertain the same, was sufficient to establish a duty on the part of appellant to warn plaintiff of the danger and to refrain from ordering him to ascend the pole without such warning, and proof of a violation of either of these duties established a cause of action against appellant, unless it appeared that the plaintiff assumed the risk which caused his injury.

It is said, however, that as there was no allegation in the first count that appellant knew or ought to have known of the danger, the allegations in regard to the ownership of the pole and the consent of the railway company to the placing of wires thereon by the postal company were essential to show a cause of action against appellant, as they were the only allegations from which it could be inferred that appellant had, or ought to have had, knowledge of the danger from the feed wires. This count was defective in failing to allege knowledge by appellant, but we do not think the allegations under discussion were intended to, or did, supply this defect. They were evidently intended to constitute a part of the case stated against the railway company. The count, notwithstanding the defect, however, was sufficient, after verdict, to support a judgment against the postal company. *Sargent Co.* v. *Baublis,* 215 Ill. 428.

It is also contended that the allegation that the injury occurred by reason of the joint and concert negligence of both defendants was necessary to be proved, because it was the only allegation showing any connection between the injury to the plaintiff and the negligence of appellant. The first count of the declaration alleged that by reason of the

failure of appellant to warn plaintiff he came in contact with the feed wires, and the second count alleged that while he was obeying the negligent order of appellant's foreman he came in contact with those wires, and it appeared from each count that the injury was occasioned by such contact with the feed wires. It therefore appeared from averments of the counts, other than those charging that the negligence was occasioned by reason of the joint and concert negligence of both defendants, that the plaintiff was injured through appellant's negligence in failing to warn him of the danger and in giving him a negligent order.

We are of the opinion that none of the reasons urged by appellant would have justified the court in giving the peremptory instruction offered by appellant at the close of all the evidence.

The railway company offered no witnesses on the trial of this cause. It is urged that the court erred in permitting such company to cross-examine the witnesses introduced by appellant, and to argue to the jury facts brought out by these witnesses after it had announced its intention, at the close of the plaintiff's evidence, to abide by its motion for a peremptory instruction, which had been refused by the court. There was no error in this action of the court. The railway company, by its conduct in this regard, merely waived its right to have only the evidence introduced by the plaintiff considered as against it, and authorized the court and jury, in determining whether a case had been established against it, to take into consideration the evidence introduced by the postal company as well as that introduced by the plaintiff. In *Condon* v. *Schoenfeld*, 214 Ill. 226, relied upon by appellant, the defendant, who introduced no evidence, did not participate in the further trial of the cause and therefore did not waive his motion for a peremptory instruction, and it was there held that the evidence introduced by his co-defendant could not be considered in determining whether a case had been made out against him.

It is next contended that the court erred in entering judgment against appellant alone upon a declaration charging joint negligence and upon a verdict finding joint liability. This question has been heretofore decided by this court adversely to appellant's contention. In *Davis* v. *Taylor*, 41 Ill. 405, it was held that taking a judgment against a portion of the defendants amounts to a dismissal of the case as to the residue, and that in actions *ex delicto* this may be done because there is no contribution among wrongdoers, and that if the mode of doing it is irregular, it is an irregularity which works no prejudice to those defendants against whom the judgment is taken. Under the authority of the case last cited the action of the plaintiff in moving for judgment against the postal company alone, and the action of the court in entering judgment against that company, amounted to a dismissal of the case as to the railway company, and if there was any irregularity in the proceedings in this regard, it is one of which appellant cannot complain. It was also held in *Illinois Central Railroad Co.* v. *Foulks,* 191 Ill. 57, that where the jury has returned a verdict against several defendants in an action *ex delicto,* the plaintiff may dismiss his suit as to a portion and take judgment upon the verdict against the remainder of the defendants.

By an amendment to his amended declaration the plaintiff alleged that on account of the injuries received by him he was rendered impotent for the rest of his natural life. He testified that he was in perfect health up to the time he was injured. On his direct examination he was asked by his counsel, "Now, Mr. Likes, how have you been with reference to your virility since the accident?" to which he re-replied, "Almost entirely gone." The evidence shows that the plaintiff's nervous system was very seriously impaired by reason of the injuries received by him; that he has temporary periods of insanity and has suicidal and homicidal tendencies, and that it will eventually be necessary to confine him in an asylum for the insane. We think that the

evidence tended to show that all of the plaintiff's disorders, including loss or impairment of virility, were the result of the injuries received by him on November 4, 1901. There was therefore no error in the action of the court in refusing to strike out the testimony of Likes that his virility was almost entirely gone, or in refusing to give to the jury appellant's twenty-second instruction, which would have told the jury to disregard this testimony.

The plaintiff testified, over the objection of appellant, that he was married and that one child had been born of this marriage. It is urged that this evidence was introduced solely for the purpose of arousing the sympathy of the jury and increasing the amount of the verdict. For such purpose it was, of course, improper; but the plaintiff's attorney stated, when offering this evidence, that it was only introduced for the purpose of showing that the plaintiff had virility before he was injured, and such evidence tended to establish that fact. By instruction numbered 18, given at the request of appellant, the court told the jury that if they found one or both defendants guilty, in assessing plaintiff's damages they must not take into consideration the question whether or not the plaintiff has a wife or family who may be dependent upon him for support. We think this instruction limited the consideration of this evidence by the jury to the purpose for which it was offered, and that appellant was not injured by its admission in this case.

The plaintiff was also asked if his child was still living, and answered that it was dead. No objection was made to this question and no motion was made to strike out the answer. Appellant, therefore, did not preserve its right to urge a reversal on account of the admission of this testimony.

Appellant offered in evidence an ordinance of the village of Fort Sheridan requiring the railway company to maintain guard wires above its electric wires at all points where wires of other companies were suspended above such elec-

tric wires.  The court refused to admit this ordinance in evidence, and appellant contends that this constitutes reversible error.  This offer was not accompanied by any promise to show that the appellant relied upon the railway company complying with this municipal regulation.  The mere existence of the ordinance could not be regarded by the jury as justification for the order alleged to be negligent or for the failure to warn the plaintiff.  The court did not err in excluding this proof.

The attorney for the railway company, at the request of the plaintiff's attorney, made certain admissions as to facts in order to obviate proof of such facts.  Appellant contends that the matters so admitted to be true were untrue, and that it was injured thereby.  At the time these admissions were made appellant's attorney stated that they were not to be taken as admissions by his client, and at the request of appellant the court instructed the jury that these admissions were not evidence against the postal company and should not be taken into consideration in determining whether a case had been established against such company.  Appellant thus obtained all the relief to which it was entitled on account of the admissions of its co-defendant, and we think that the alleged facts so admitted were not material to the plaintiff's cause of action against appellant.

Appellant offered a number of instructions announcing the rule as to who are fellow-servants, and advising the jury that if the injury to Likes was occasioned by the negligence of a fellow-servant he could not recover.  All of these instructions were refused, and it is contended that the court erred in thus refusing to submit to the jury the question whether Likes was injured through the negligence of a fellow-servant.  In support of this contention it is urged that the evidence tended to show that at the time plaintiff was ascending the pole he was delayed, hindered and embarrassed by a lack of slack in the wire which he was carrying, and that this condition was caused by a tangle of the wire

which was being unreeled, jerked and pulled by McLaughlin, Weaver and Donnelly, and that the jury could have found from the evidence that the three persons last mentioned were guilty of negligence in this regard, that such negligence was purely that of a fellow-servant, and that such negligence caused the injuries to the plaintiff, and that the instructions were intended to advise the jury that if the injury was brought about by reason of any negligence of McLaughlin, Weaver and Donnelly in this regard the plaintiff could not recover. No count of the declaration charged any negligence in reference to a tangle or lack of slack in the wire, and the jury were expressly instructed that there could be no recovery unless it was shown, by a preponderance of the evidence, that the plaintiff was injured as a result of the negligence charged in the declaration. The instructions stating the fellow-servant doctrine were properly refused. There was no issue in the case to which they were applicable.

The court gave an instruction, upon its own motion, which appellant contends disregarded the defense of assumed risk. The instruction told the jury that the plaintiff had brought his suit upon the theory that he was injured by the joint and concert negligence of the defendants, and it was the function of the jury to determine whether, under the evidence and instructions of the court, the plaintiff had established a case against both of the defendants or either of them or neither of them, and that if the evidence, under the instructions, warranted it, the jury might find one defendant guilty and the other not guilty, or might find both guilty or both not guilty. The evident purpose of this instruction was to announce the law in reference to a recovery against one of two defendants in an action for a tort where the declaration charged that both defendants were guilty of negligence and the proof established the guilt of but one. The instruction is not one which enumerates the elements necessary to be proved in order that the plaintiff

may recover, but expressly refers the jury to the evidence and the instructions of the court in determining whether the plaintiff has established a case against either or both of the defendants or neither of them. The instructions so referred to include instructions submitted by appellant which fully informed the jury as to the defense of assumed risk. There was therefore no error in giving the instruction under consideration.

Appellant complains of the action of the court in refusing its instruction numbered 27. This instruction was upon the assumption of risk by the plaintiff. Seven instructions were given to the jury at the request of appellant stating the law applicable to this defense, and the twenty-seventh instruction was fully covered by those given.

Appellant's instruction numbered 23 was properly refused because it was included in its instruction numbered 3 which was given.

The record in this case is free from substantial error, and the judgment of the Appellate Court will therefore be affirmed.

*Judgment affirmed.*

Cartwright, Hand and Carter, JJ., dissenting:

To admit evidence that the only child of the plaintiff, who claimed to have lost his procreative powers, had died, so that he must remain childless through the fault of the defendant, was serious and prejudicial error, and we think the objection made to that class of testimony preserved the question for review.

There was evidence tending to prove that the injury resulted from the negligence of fellow-servants of the plaintiff in handling the wire, and we think the defendant was entitled to an instruction advising the jury as to the law on that subject, and that the error in refusing such instructions was not obviated by referring the jury to the declaration to determine the nature of the negligence charged.