## Harrington Manufacturing Company v. George W. Arendell.

### Gen. No. 4,826.

1. ASSUMED RISK—*what within doctrine of.* The doctrine of assumed risk applies where the injury resulted from a danger which attended the use of machines, which danger was apparent to any one of ordinary intelligence and experience.

2. ASSUMED RISK—*what essential to relieve servant from opera-*

*tion of doctrine of.* In order for a servant to take his case out of the general rule which holds him to have assumed the danger incident to his employment, it is incumbent upon him to show that he was ignorant of the peril to which he was exposed and the means of avoiding it.

Action in case for personal injuries. Appeal from the Circuit Court of Peoria county; the Hon. LESLIE D. PUTERBAUGH, Judge, presiding. Heard in this court at the April term, 1907. Reversed, with finding of fact. Opinion filed August 6, 1907.

BARNES & BOULWARE and GEORGE B. FOSTER, for appellant.

MAPLE & LOVETT, for appellee.

MR. JUSTICE WILLIS delivered the opinion of the court.

This was an action on the case brought in the Circuit Court of Peoria county by George W. Arendell, appellee, against the Harrington Manufacturing Company, appellant, to recover damages for a personal injury sustained by him while working in its establishment. March 1, 1906, a declaration was filed, to which a demurrer was interposed and overruled. Appellant filed a plea of not guilty, a trial was had before a jury, a verdict returned finding appellant guilty and assessing appellee's damages at $2,400. Appellant moved for a new trial, appellee entered a *remittitur* of $1,000, the motion for a new trial was overruled, judgment was entered on the verdict for $1,400 and the company appealed.

The declaration alleged in substance that appellant operated and controlled a manufacturing establishment in which appellee was employed; that through its foreman he was ordered to shape some boards upon a machine called a "jointer," which was dangerous to operate, of which danger appellee was unaware and about which he was not informed or warned; and alleged that it was appellant's duty to have protected and covered a part of such machine so that it would have

been impossible for appellee to get injured while at work
thereon, and its duty to have warned appellee of the
dangerous character of the machine; and averred that
appellee while in the exercise of due care for his own
safety, attempted to shape some boards on said ma-
chine and his left hand slipped into a part of said
machine which had been so negligently left uncovered
and the fingers were cut and bruised.

On the morning of November 21, 1905, appellee ap-
plied for work to Harrington, president of the com-
pany, who took him to Hogan, the foreman, who put
him to work upon a circular saw, and later, upon a
jointer. In the afternoon while at work on this ma-
chine, his left hand slipped against the knives and
the fingers were injured. The jointer upon which he
was working when injured consisted of an iron table
six feet long and fourteen inches wide, divided in the
center by a transverse slot or opening three inches
wide, in which revolved a drum or head four inches
in diameter, to which were attached knives. This
drum or head was underneath the table bed, and when
in operation the knives projected about a quarter of
an inch above the bed of the machine, the height de-
pending upon the amount to be cut from the board.
There was a gauge about four inches in height fastened
to the bed at the back of the table, running its whole
length, to serve as a guide or back brace for the boards
as they passed over the knives. Across the bed of the
machine were two springs or clamps made of hickory
wood, two inches wide, eighteen inches long and about
one and one-half inches thick. These springs were
made by having one end sawed up the long way a
number of times, making a number of little springs,
while the other end remained solid and was attached
by clamps to the front of the bed of the machine, at an
angle of about forty-five degrees. One of these springs
passed to the center of the gauge as close as it could
be set to the left side of the knife, and the other crossed
over the slot in the bed of the machine to the gauge

and set as close to the right side of the knife as possible. The object of the first spring was to have the board enter the opening straight, so as to make a perfect round, and the object of the second was to hold the last end of the board up against the knife. In using the machine the operator stood in front of it, and taking the board to be jointed by its upper edge, pressed it between the gauge and the springs on the table bed, against and across the knives.

The averment in the declaration that the jointer was dangerous to work upon and that the knives thereon were uncovered, is supported by the proof. It is also clear from the evidence that the danger of injury attending the use of the machine was apparent to one of ordinary intelligence and experience, and was incident to the employment, and as such, according to the general rule, was assumed by the servant as one of the ordinary risks of the service. In order for appellee to take his case out of the general rule which held him to have assumed the danger incident to the employment, it was incumbent upon him to show that he was ignorant of the peril to which he was exposed and the means of avoiding it. Herdman-Harrison Milling Co. v. Spehr, 145 Ill. 339; Chicago & Eastern Illinois Railroad Company v. Heerey, 203 Ill. 492; Cichowicz v. International Packing Co., 206 Ill. 346; Jones v. Roberts, 57 Ill. App. 56.

Appellee testified that the foreman first put him at work upon a circular saw, then upon this jointer; that he worked on this machine, planing boards with a single knife from eleven or 11:30 until noon; that in the afternoon the foreman set him at work upon the saw again, and then told him to come over to the jointer; that he saw the foreman adjust the machine, take out one knife and put in two others; that the foreman picked up a board and shoved it through, saying, "Put it through this way;" that he showed appellee how to hold the board; that while he was

holding the board one way, the foreman told him to hold it with his thumb on the top and his fingers on the side, because the foreman said, if he held it the other way his hand might slip off; that he planed three or four boards after the foreman went away, that the knives were in plain sight all the time, that he could see them all the time he was pushing a board through; that after the foreman came back, while appellee was starting an eight-inch board through the jointer, the foreman hit the clamps with a hammer, and when appellee went to push it went so much harder that his hand slipped off and went into the machine. The foreman testified that he adjusted the machine, ran two or three boards through, that appellee took another board, ran one side through, turned it over and started it through on the other side and when about to the end, his hand slipped into the machine. It appeared from appellee's testimony, that he was thirty-seven years old, of at least ordinary intelligence and of some experience with machinery. Two witnesses testified that he stated, when he asked for employment, that he was a machine man. This he denied, but admitted that he had a recommendation from a certain firm which read, "This is to certify that G. W. Arendell has a good general understanding of machines." Another witness testified that appellee stated to him while in the shop the day he was injured that he was a machine man.

That appellant's foreman struck the clamps with a hammer as appellee was passing the board through the machine, is not denied by appellant, nor does appellee rely upon that fact to maintain his judgment, but bases his claim for recovery solely on the fact that the jointer was not guarded.

From the evidence in this record it would be unreasonable to hold that appellee did not fully appreciate and realize the danger that necessarily attended the prosecution of the work in which he was engaged, or

that his injury occurred because he had not been properly advised as to the means of avoiding it, which was by being careful that his hands did not slip off the boards and come in contact with the knives, and this he must have known.

To support this judgment, counsel for appellee relies principally upon the case of Postal Telegraph Cable Co. v. Likes, 225 Ill. 249. There the danger was latent, while in this case it was patent, and as much so to appellee as to the officers of appellant. As between employer and employe, the latter assumes all the usual and known dangers incident to the employment, and he also takes upon himself the hazard of the use of defective tools and machinery if, after employment, he knows the defects and voluntarily continues in the employment. Herdman-Harrison Milling Co. v. Spehr, *supra*.

After thorough and careful examination of all the evidence in the record, we are of the opinion that but one reasonable inference can be drawn therefrom, which is, that appellee assumed the risk attending the service in which he was engaged.

The trial court should, therefore, have sustained appellant's motion made at the close of all the testimony and directed a verdict for appellant. In view of this conclusion, it will not be necessary for us to consider the other errors assigned.

The judgment is reversed.

*Reversed, with finding of fact.*

Finding of fact, to be incorporated in the judgment of the court:

We find that the injuries for which plaintiff sues were due to a risk which he assumed.