**Louis Lerette, Appellee, v. James C. Davis, Agent, and Chicago, Burlington & Quincy Railroad Company, Appellants.**

**Gen. No. 7,020.**

1. RAILROADS—*sufficiency of evidence to support verdict in action for personal injuries.* A verdict of damages in favor of a pedestrian whose leg was crushed at a street crossing when he was thrown from bumpers of cars when attempting to cross over such bumpers, the train moving suddenly, will not be disturbed on appeal on the theory that the evidence establishes contributory negligence, when the pedestrian is the only person who knew where the accident happened, it being late at night, and where the theory of the defense that the accident happened some distance away from the street crossing was based on inference from testimony as to where bone, flesh and blood were found on the right of way.

2. APPEAL AND ERROR—*right of one party referring in instructions to pleadings to complain of such act by other.* A defendant cannot complain on appeal that instructions given at a trial for a plaintiff referred the jury to the declaration as to the negligence alleged, when the defense made like references in several of its instructions.

3. APPEAL AND ERROR—*instruction referring to count containing excluded grounds where cause of action also contained.* Instructions permitting a plaintiff in an action for personal injuries to recover under any count of the declaration are not erroneous in failing to exclude a count which alleges violation of certain ordinances, where such ordinances were not admitted in evidence,

when the count in question states a cause of action irrespective of the violation of the ordinances.

4. APPEAL AND ERROR—*when one modifying instruction at court's suggestion cannot complain of modification.* Defendants at a trial who comply with the court's suggestion to change the word "defendant" in the instructions to the plural, "defendants," cannot complain on appeal that the instructions were erroneous in that respect.

5. INSTRUCTIONS—*argumentative instruction properly refused.* An instruction requested by defendants in a personal injury case is properly refused when it is more of an argument than a proposition of law.

6. RAILROADS—*instruction in personal injury action assuming contributory negligence properly refused.* Instructions requested by defendant railroad companies in an action for injuries to a pedestrian are properly refused when they assume that the plaintiff was negligent in attempting to cross between cars at a street crossing.

7. INSTRUCTIONS—*instruction as to matter not in evidence properly refused.* An instruction requested by defendant railroad companies in an action for injuries to a pedestrian at a crossing, which instruction undertakes to state the legal effect of a city ordinance, is properly refused, the court at the trial having refused to admit the ordinance in evidence.

8. DAMAGES—*when not excessive.* A verdict of $18,000 awarded to a pedestrian whose leg was amputated after being run over at a street crossing by a train, will not be disturbed on appeal as excessive, when it appears that the pedestrian was a truck driver by occupation, that he was 40 years of age, single, and a laboring man earning about $3.60 a day for 6 days in the week, that he was illiterate and incapable of filling a clerical position, that he was unable to wear an artificial leg because of tenderness of the flesh at the stump of the leg, and that he would probably be unable to follow any gainful occupation.

9. APPEAL AND ERROR—*waiver of objection that one not proper party by failure to urge below.* An objection that a railroad is not a proper party to an action for damages for personal injuries, when under the control of the Director General of Railroads of the United States, is waived when there was no suggestion at the trial that the railroad was under such control, when objections made, instructions requested, exceptions taken and a motion for new trial were all by both defendants, the railroad company and the Director General of Railroads, the same attorneys representing both parties.

10. EVIDENCE—*judicial notice of federal statute and proclamation.* The courts are bound to take judicial notice of the statute

as to federal control of railroads, and of the proclamations and orders of the President thereunder.

11. Appeal and error—*when judgment may be abandoned as to one defendant and affirmed as to other*. On an appeal from a judgment against a railroad company and the Director General of Railroads in a personal injury action, a judgment against both defendants may be affirmed against the Agent of the United States, substituted in place of both defendants, as provided by the Act of Congress of February 28, 1920, § 206, when a written motion to such effect is presented by plaintiff to the court on appeal, and when no resistance to such motion is made by the defendants.

Appeal from the Circuit Court of La Salle county; the Hon. Joe A. Davis, Judge, presiding. Heard in this court at the October term, 1921. Affirmed as to James C. Davis, Agent. Opinion filed April 27, 1922.

H. L. Richolson and Boys, Osborn & Griggs, for appellants.

Coleman & Coleman, Lee O'Neil Browne and Butters & Clark, for appellee.

Mr. Presiding Justice Dibell delivered the opinion of the court.

Somewhere near one o'clock a. m. of Sunday, September 29, 1918, Louis Lerette attempted to cross over the bumpers between two freight cars standing on a house track of the Chicago, Burlington & Quincy Railroad Company in the City of La Salle, when the cars were suddenly started and he fell backwards and a car wheel passed over his right leg and crushed it. It was amputated the same morning. He brought this suit against the Director General of Railroads and the Chicago, Burlington & Quincy Railroad Company to recover damages for said injuries. On a jury trial he had a verdict and a judgment for $18,000 against both defendants, from which defendants appeal.

The proofs tending to support plaintiff's case are as follows: Plaintiff was about 40 years old, unmarried, and had been working for the City of La Salle for

about 9 years driving a team and garbage truck. He was in good health. On Saturday evening he was down near the Illinois river visiting various acquaintances. His home was some distance farther north where he had boarded for 16 or 17 years. A branch line of the Chicago, Burlington & Quincy Railroad ran easterly and westerly not a great distance north of the river and crossed Creve Coeur street nearly at right angles, said street running north and south. The railroad had four tracks across said street, the northernmost of which was known as the house track. A short distance north of that railroad the main line of the Rock Island railroad crossed said street in the same direction. Just east of said street and north of the Rock Island tracks was their passenger station and baggage room and a baggage-master was there all night. Plaintiff went north on Creve Coeur street until he reached the Burlington tracks, when he found a cut of freight cars standing across the street on the house track. He waited a few minutes and then went south so as to be off all the tracks and found at the side of the street a box or cask and sat down upon it, and smoked while waiting for the street to be cleared. He waited there from 15 to 20 minutes and heard no bell nor other signal and did not know that an engine was attached to either end of said cars. He then started to climb through between two of the cars and just had a foot on the top of the bumper when without any signal or bell the cars started west and he fell backward and one or more wheels ran over his right leg below the knee. The cars passed by to the west. He knew there was a baggageman at night at the Rock Island baggage room and he started crawling east and calling for help. The Rock Island baggage-master heard him and paid no attention at first but after repeated calls went and found him, crawling along on the ground. He went back to the station and found a passenger awaiting and the two went with a stretcher

and carried plaintiff to the depot and called an ambu-
lance and he was taken to a hospital where two physi-
cians amputated his limb. Plaintiff is slightly corrob-
orated as to the place of the accident by the testimony
of the baggage-master as to the direction from which
he first heard the calling. Defendants' witnesses
showed that it was a customary or usual thing to leave
that street blocked with cars after midnight. There
was practically no travel on that street at that place
after midnight. Plaintiff is the only one who knows
where he was when he was run over, but the defense
claimed that it was not on the street. Some little time
after the accident the switching crew which was han-
dling those cars got word that they had run over a man
and some of them went back and went over the ground.
They testified that they found about 300 feet east of
the street two pools of blood and some bone and flesh
and that they did not see anything between there and
the street. The declaration had charged that the in-
jury was on the street and that the street had been
blocked by standing cars longer than allowed by stat-
ute and that the cars had been started without pre-
viously giving any signal as the statute requires, and
that an ordinance of the city had been violated. The
defense contend that the attempt of the plaintiff to
pass between these cars under any circumstances was
such contributory negligence by plaintiff as prevented
a recovery by him and that the accident did not happen
on the street but on the railroad grounds where he had
no right to be. It is claimed in argument here that
the evidence is so conclusive that the accident did not
happen on the street that the recovery cannot stand.
There is no chance to claim that plaintiff was confused
because he was under the influence of intoxicating
liquor. He testified that he did not use intoxicating
liquor; that he did not frequent or hang out at any
saloon; that he had not been at any saloon that night
and had drunk no intoxicating liquor. He told where

he had boarded and where he had worked in La Salle
for many years. No effort was made to contradict
these statements as could easily have been done if they
were untrue. It must be assumed that he was entirely
sober. He knew whether or not he was on the street
when he attempted to pass through these cars. He
either told the truth or an intentional falsehood. No
one else knew where the accident occurred. The de-
fense assume that it must have been where they found
the blood and bone and flesh. It is not proven that
plaintiff's trousers were cut by the wheel passing over
his leg. It is not shown how bone and flesh could have
got onto the right of way. It is only an inference that
that is where the accident happened. Two of the
switching crew as they came up from the west to learn
about the accident did not see any signs before they
reached this point 300 feet east of the street. This
crew had been on duty since 4 o'clock the previous
afternoon. They had been over a wide range of terri-
tory. They had crossed the river and done switching
at Oglesby and Deer Park and other places on the
south side and at various places in La Salle. They
had at some time been at the east end of that house
track and set out those cars. They had then gone west
on another track to the west end of the house track
and afterwards pulled the cars west. One or two of
them thought they had gone west over this street
about 5 or 7 minutes before they pulled the cars west.
Some of them testified that an automatic bell on the
engine had been ringing all the time. One of them,
however, stated a fact not alluded to by the others.
He stated that at some time after midnight, but how
long after he did not know, they stopped and had sup-
per, and that that lasted half an hour. It is extremely
improbable that this automatic bell was kept ringing
during that half hour while they ate supper. No one
pretended to remember where they took that supper
that night. The jury may have concluded that they

took that supper beyond the west end of the house track during the time that plaintiff was awaiting to cross the track on the street and that that was why he heard no bell or signal. They may have concluded that after the supper the engineer started to pull these cars west before he turned on the automatic bell. Not all the switching crew testified. It is clear that if the jury had found for the defense such a verdict could not have been disturbed on the evidence. But in view of the fact that plaintiff knew where the accident happened and no other witness did, we are unable to say that another jury would find for the defense and we conclude, after carefully reading all the evidence, that the verdict should not be disturbed upon the merits.

Much complaint is made of the instructions given and refused. Defendants cannot complain that the instructions given for plaintiff referred the jury to the declaration for information as to the negligence alleged, since the defense made a like reference in several of its instructions. One count of the declaration alleged a violation of a certain ordinance of the city and the court did not admit the ordinance in evidence and it is argued that instructions which permitted the plaintiff to recover under any count of the declaration should have excluded the count upon the ordinance. An examination of the count shows that it states a cause of action irrespective of the violation of said ordinance. In the instructions requested by the defense many of them used the word "defendant" in the singular number. The bill of exceptions shows that the court called the attention of the defendants' counsel to that feature of their instructions, and suggested to them that they change the word to the plural, defendants, and that they did so and several of said instructions were given in that form. As they complied with the court's suggestion they have nothing of which to complain in that respect. None of these instructions named the defendant referred to but they

all treated the case as if there were but one defendant. The sixteenth instruction, requested by the defense and refused, was more of an argument than a proposition of law applicable to the case, and it required the jury to be "satisfied" and that was sufficient to condemn it. The seventeenth refused instruction assumed that plaintiff was negligent in attempting to cross between the cars. So did the eighteenth refused instruction and the nineteenth. We think the twentieth was properly refused. The twenty-first was properly refused because it undertook to instruct them concerning the legal effect of the city ordinance and that was not a proper subject for instruction because the court had refused to admit it in evidence.

It is urged that the damages awarded are excessive. Defendant was 40 years old, single and a laboring man, earning $3.60 per day for 6 days in the week. He was illiterate and incapable of filling a clerical position. Apparently he is unable to wear an artificial leg because of the tenderness of the flesh at the stump of the leg. Probably he will not be able to follow any gainful occupation. He is entitled to compensation for his pain and suffering. While the damages awarded are large, yet we do not feel authorized to say that they are so excessive that we should on that account reverse the judgment or compel an arbitrary reduction in some fixed amount.

It is earnestly argued here that the railroad company was not a proper defendant and was not liable for this injury and that the judgment against it must be reversed. The question whether the railroad company is liable for such causes of action occurring while the road was under the control of the Director General of Railroads of the United States under the Federal Control Act of March 21, 1918, has been much discussed in judicial decisions. Many State and Federal courts have held that the railroad company is a proper defendant in such case. Many others have held

that it is not. We are saved the necessity of discussing these cases because in *Missouri Pac. R. Co. v. Ault,* decided by the Supreme Court of the United States on June 1, 1921, and reported in 256 U. S. 554, it is decided that if a railroad company so sued "seasonably" claims that it is not liable for such a cause of action arising while the road is being operated by the Director General, the railroad company should be dismissed from the action, and that a judgment against it in such case should be reversed. Plaintiff contends that this question was not seasonably raised by the railroad company in this case. In considering this and other questions we assume that the abstract here filed by the defense is sufficient. The same attorneys appeared for both defendants. They filed separate pleas of not guilty by each defendant. They also filed a special plea by the railroad company to the effect that it was not operating the road at the time of this accident. So far as we are able to ascertain, the subject was never again alluded to in the court below. Defendants proved by at least two of their switching crew, called as witnesses for the defense and examined by counsel for the defense, that they were working for the Chicago, Burlington & Quincy Railroad Company at the time of this accident. They elicited these answers from the train crew by leading questions. There is not in the evidence any suggestion that the Director General was in charge of this railroad. Of course, the courts are bound to take judicial notice of the Federal Control Act and of the proclamations and orders of the President thereunder, and therefrom know that this road was at that time under the control of the Director General. Every objection to testimony at the trial in the court below was in the name of both defendants. Every instruction for the defense was expressly offered by both defendants. Every exception to the ruling of the court on instructions was taken by both defendants. No instruction was re-

quested by the defense concerning the position of the railroad company in this case or directing the jury to find for the railroad company. The motion for a new trial was in writing and was by both defendants and contained no suggestion that the railroad company was entitled to a new trial or was not liable under the evidence. That point was thereby waived. (*Erikson v. Ward*, 266 Ill. 259.) The motion in arrest was by both defendants and the exception to its denial was by both defendants. It seems entirely clear, so far as the abstract shows, that both sides and the court understood at the trial that the suit was properly against both defendants. The trial court was never asked in any way to rule that the railroad company was not liable if a cause of action was established against the Director General. It may be that there is some undisclosed reason for the pursuit of this course by the defense. It may be that the railroad company is liable to pay the attorneys' fees incurred for the defense of such case by virtue of some Presidential order to which our attention has not been called. We are of opinion that this case ought not to be reversed upon a point not raised in the court below. Appellants could waive the misjoinder, and we think did so. (*Eckels v. Muttschall*, 230 Ill. 462.) Indeed, the very lengthy assignment of errors in this court contains no suggestion that this judgment ought to be reversed as to the railroad company if it is valid as to the Director General.

But the question is now presented in another form. The cause was argued orally. At the close of the oral argument the appellee entered a written motion, too lengthy to be here inserted in full, but which asked the court to substitute James C. Davis, agent, designated by the President of the United States under a certain statute therein referred to, as sole defendant and appellant in this case, instead of in lieu of the Director General and the railroad company, and that the judg-

ment in the above-entitled cause rendered by the trial court be modified and amended so that said judgment on the verdict shall stand only against said James C. Davis, agent, designated by the President of the United States, etc. This motion was supported by a brief attached thereto, of which several copies were filed here, which brief contained reasoning in support of the motion and reviewed numerous authorities supposed to be applicable. We took that motion with the case. The attorneys for the defense were present when that motion was made. Copies of the motion and brief were on file for counsel for the opposite party. They have made no resistance to the motion. It is the general rule of law prevailing in this State, announced by our Supreme Court in numerous cases and adhered to as late as *Livak v. Chicago & E. R. Co.*, 299 Ill. 218, that a judgment against several defendants is a unit and must stand against all the defendants or fail as to all. There are reasons why it seems to us that that rule ought not to apply to a case of this character. This case is more nearly analogous to a suit against a receiver and the corporation for which he is receiver, where it has been frequently held that a court of appeal, upon the question being raised, may reverse the judgment against the company itself and yet sustain it as to the receiver. There is really but one interest here. The effect of this motion, if granted, is to abandon the judgment against the railroad company and affirm it as to the agent of the United States, and the railroad company will not be injured and has no cause of complaint if the motion is granted. Section 206 of an Act of Congress of February 28, 1920, authorizes the President of the United States, after the termination of Federal control over railroads, to appoint an agent who shall be substituted for the Director General of railroads in actions then pending and to permit such actions to be prosecuted to final judgment. We are required to take judicial notice of that statute

which will be found in the "Federal Reporter" of April 1, 1920. We understand the meaning of that act to be that no notice is required to such agent, but that, upon an order of substitution being made, he is considered as in court, and thereafter bound by the subsequent proceedings. That act authorizes such substitution to be made not later than 2 years from the date of the passing of the act. Whether that limitation of 2 years applies to cases pending on appeal after the final judgment we are not advised, but, in order to comply with said act, we caused to be entered herein in vacation on February 27, 1922, and before the expiration of that limitation, an order granting the motion so far as to substitute in this court in this cause said James C. Davis, agent, etc., for the Director General of Railroads, leaving undetermined the question whether said motion should be granted as to the railroad company. On a verdict against two, plaintiff may take judgment against one and abandon the case as to the other. (*Postal Tel.-Cable Co. v. Likes*, 225 Ill. 249.) That is the legal effect of this motion. We conclude that said motion should be granted as to the railroad company also. We now therefore grant the entire motion and substitute James C. Davis, Agent of the United States, in place of the Director General of Railroads and the Chicago, Burlington & Quincy Railroad Company, and affirm the judgment against James C. Davis, Agent of the United States, but without execution. As the form of the judgment is unusual, we suggest that counsel for plaintiff prepare the judgment order as here directed and submit it to opposite counsel for their approval as to form and then to this court for its approval.

Judgment affirmed as to James C. Davis, Agent of the United States.

*Affirmed as to James C. Davis, Agent.*