**William C. Hartray, Administrator of the Estate of Christ Anderson, Deceased, Appellee, v. The A. T. Willett Company, Appellant.**

**Gen. No. 27,987.**

1. NEGLIGENCE—*when action not abated as to all defendants by verdict for one.* A plea *puis darrein continuance* by one defendant, alleging that the action abated as to it of necessity by the direction of a verdict for its codefendants sued for damages for the death of plaintiff's intestate by wrongful act, is demurrable where it is predicated on allegations of the declaration charging that decedent's death resulted from various acts of negligence of the defendants in combination and concurrence, where negligence charged against decedent's employer consists of the improper construction and maintenance of a scaffolding on which decedent was working and which projected over the street and that charged against defendant consists of the improper and negligent operation of a horse-drawn vehicle which struck the scaffold and precipitated decedent to the ground, where there is no charge that defendant and its codefendants were jointly engaged in the performance of any act which contributed to the injury.

Vol. CCXXXII 13.

2. FORMER ADJUDICATION—*when judgment for one tort-feasor not adjudication of liability of codefendant.* Direction of a verdict for all the defendants, in an action for damages for death of plaintiff's intestate by wrongful act, except appellant, was not an adjudication of plaintiff's claim against it, where the declaration, although it charged that decedent's death resulted from the various acts of negligence alleged and as a consequence of the concurrence and combination and coincidence of the negligence of all the defendants, alleged acts of negligence by appellant which were separate and distinct from that charged against the other principal defendant, as a consequence of which the death in question may have resulted.

3. LIMITATIONS OF ACTIONS—*when defense of limitations not let in by amended declaration.* The defense of limitation is not available in bar of an action for damages for the death of plaintiff's intestate to the sole remaining defendant after verdict for its codefendants, by reason of the filing of an amended declaration alleging that decedent's death resulted from the negligence of defendant in operating a wagon so that it struck a scaffold on which decedent was working and precipitated him to the street, where the original declaration charged the defendants with substantially the same tort, although it also charged the codefendants with other several and distinct torts and alleged that the acts of all combined and concurred to cause the death.

4. WORKMEN'S COMPENSATION—*act as defense must be pleaded.* Failure of plaintiff in an action for damages for death of his intestate by defendant's wrongful act to allege and prove that his intestate was not operating under and subject to the Workmen's Compensation Act could not defeat his right of recovery against defendant, a third person, where plaintiff sues on a common-law right of action and not under the act, decedent having been a casual employee of his employer, and defendant could not avail itself of the act as a defense without pleading and proving it.

5. HIGHWAYS AND STREETS—*sufficiency of evidence of negligent driving.* In an action for damages for death of plaintiff's intestate who was thrown from a swinging scaffold over the street when the scaffold was struck by the top of a wagon, the driver of the wagon is shown to have been guilty of negligence by evidence that decedent and his fellow employees had constructed the scaffold for temporary use in constructing a driveway from the floor of a street viaduct to an abutting building and had erected a barricade in the street below to divert vehicular traffic away from the scaffold, that there was sufficient space left for all traffic outside the barricade, and that the wagon in question had been driven over the barricade and against the scaffold.

6. NEGLIGENCE—*working on swinging scaffold over street as contributory negligence.* A structural steel worker is shown not to

have been contributorily negligent in working on a swinging scaffold suspended over the street by ropes where the evidence shows that while the scaffold was loosely swung from ropes and that the timbers of which it was composed were not nailed or otherwise secured except by their own weight, and that such worker assisted in constructing it, it was built for temporary use only and had been used for several hours before the accident in suit, that a barricade had been erected in the street below to divert traffic, and that the scaffold would have been sufficient for the purpose for which it was erected, without injury to any person working thereon, had not the wagon in question driven over the barricade in question and into the scaffold.

7. APPEAL AND ERROR—*when negligence not presumed on appeal.* On appeal from a judgment awarding damages for the death by wrongful act of a structural steel worker who was thrown from a swinging scaffold suspended over a public street as the result of the scaffold being struck by the top of a wagon, it will not be presumed, in the absence of evidence, that the scaffold was an illegal obstruction in the street.

8. HIGHWAYS AND STREETS—*sufficiency of proof of ownership of wagon negligently driven.* In an action for damages for the death of a worker who was thrown from a scaffold suspended over a street when the scaffold was struck by the top of a wagon negligently driven against the scaffold, a verdict against defendant is not manifestly against the weight of evidence where the evidence shows that defendant at about the time of the accident had one or more wagons painted and lettered similar to the one which caused the accident and that a wagon bearing defendant's name caused the accident although there is contradictory evidence.

9. DAMAGES—*excessive of award for death of skilled laborer.* An award of $10,000 for the death of a structural steel worker fifty years old, who earned from $35 to $70 per week and was seldom idle, who was sober and industrious and applied his earnings to the support and maintenance of his wife and three children and to the education of the latter, who were nineteen, thirteen and ten years old, respectively, is not excessive.

THOMSON, J., dissenting.

Appeal by defendant from the Circuit Court of Cook county; the Hon. OSCAR HEARD, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1922. Affirmed. Opinion filed February 20, 1924.

GALLAGHER, KOHLSAAT, RINAKER & WILKINSON, for appellant.

C. HELMER JOHNSON, for appellee.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

On March 19, 1918, the Standard Trust & Savings Bank, administrator of the estate of Christ Anderson, deceased, as plaintiff, began suit in the circuit court of Cook county against the Heco Envelope Company, the A. T. Willett Company, C. Guinand and Chicago Great Western Railroad Company, to recover damages under the Injuries Act for the death of Christ Anderson, which it was claimed was due to his being thrown off a certain scaffolding on March 21, 1917. On June 6, 1918, the Standard Trust & Savings Bank, as administrator, filed a declaration containing four counts.

The first count alleges that the railroad company, "wrongfully, carelessly and negligently constructed, maintained and controlled" a scaffolding connecting the Polk street viaduct with the railroad company's freight house, "where it would be likely to be struck by passing vehicles of traffic"; and that the other defendants, being possessed of and controlling a certain horse-drawn vehicle, going south (sic) on Franklin street, under the Polk street viaduct, controlled and operated it so negligently that it ran into and against the scaffolding on which Anderson was working, "whereby, and as a direct consequence of the various and several acts of negligence of all of said defendants, then and there in combination and concurrence and coincidence," Anderson was thrown from the scaffolding to the street and so injured that on June 20, 1917, he died. That count further alleges that at the time of the injury Anderson was not operating under the terms of the Workmen's Compensation Act of Illinois. It further alleges that Anderson left him surviving a widow and four children as next of kin and heirs at law, all of whom were residing with and depending upon him at the time of his death.

The second count alleges that the railroad company constructed and maintained a scaffolding in an unsafe manner, so that it did not give proper or adequate protection to the persons employed upon it, and that it was made of light, flimsy and insufficient material, not properly and sufficiently fastened so as to withstand weight and shocks. It further alleges that the other three defendants so negligently operated a horse-drawn vehicle, going south on Franklin street, that it collided with the scaffolding, and that as a result of the concurrent negligence of all the defendants, Anderson was thrown to the ground and killed.

The third count of the declaration alleges that the railroad company carelessly and negligently erected and maintained a scaffolding in an unsafe and improper manner; that it was made of loose and flimsy material, improperly and unsafely constructed and fastened together, so that it would not sustain and withstand shocks, and would not give proper and adequate protection to persons employed thereon; that it projected out over Franklin street, where it would not be likely to be struck by passing traffic; that it was not provided with a safety rail properly bolted, rising above the floor or main portion of the scaffolding, and that it was not fastened to prevent it from swaying from said structure there; and also alleges that the defendant railroad company negligently ordered Anderson to work upon the scaffolding which was unsafe, and that while he was working upon the scaffolding he was precipitated therefrom by a wagon, operated by the other named defendants, striking the scaffolding, and that as a result of the concurrent negligence of all of said defendants, Anderson sustained injuries from which he died.

The fourth count of the declaration alleges that the defendant railroad company had constructed a scaffolding which did not give proper and adequate protection to those employed upon it; that it was built

contrary to law, and that it projected out into a public highway known as Franklin street; and that the railroad company negligently failed to place any guard or mechanical device of warning, so that team traffic on Franklin street would be notified not to drive into or come in contact with or against the scaffolding. That count further alleges that a horse-drawn wagon was negligently operated by the A. T. Willett Company, Heco Envelope Company and C. Guinand, so that it collided with the scaffolding, "and in consequence of the several acts of negligence of all the defendants named then and there in combination and concurrence as hereinabove set forth," Anderson was thrown from the scaffolding a distance of eighteen feet and killed.

To the declaration each of the defendants filed a plea of the general issue and special pleas. The special plea of the A. T. Willett Company alleged that it was not in possession of and not controlling, maintaining or operating "a horse-drawn livery vehicle at the time and place, and in the manner and form as alleged by the plaintiff in its declaration."

On November 21, 1921, there was a trial with a jury, and on November 25, 1921, the court instructed the jury to find the defendants Heco Envelope Company, C. Guinand, and Chicago Great Western Railroad Company not guilty. A verdict was rendered accordingly, and thereafter, the cause having been submitted to the jury, and the A. T. Willett Company being the sole defendant, the jury was on November 26, 1921, discharged as being unable to agree upon a verdict.

On February 11, 1922, William C. Hartray was substituted as administrator of the estate of Christ Anderson, deceased, in lieu of the Standard Trust & Savings Bank.

On March 29, 1922, the A. T. Willett Company filed a plea of *puis darrein continuance* alleging that the

plaintiff cannot further maintain its action against the defendant, the A. T. Willett Company, because the same court, on November 25, 1921, had directed the jury to find the defendants, Chicago Great Western Railroad Company, Heco Envelope Company and C. Guinand, not guilty, and a verdict had been rendered by the jury at a former trial where the same issues were presented by the declaration of June 6, 1918, which charged that the plaintiff's intestate was fatally injured "as the result of the concurring negligence of said Chicago Great Western Railroad Company, a corporation; the A. T. Willett Company, a corporation; Heco Envelope Company, a corporation; and C. Guinand." On March 30, 1922, the defendant, A. T. Willett Company, filed a plea of *res adjudicata,* alleging that by reason of the verdict and judgment in favor of the A. T. Willett Company's codefendants, jointly charged with negligence, the plaintiff was barred from maintaining its action against the A. T. Willett Company.

On March 30, 1922, the plaintiff filed an amended declaration alleging that while the plaintiff was at work on the scaffolding projecting out over Franklin street at the Polk street viaduct, and there was insufficient space between the surface of Franklin street and the overhead scaffolding for the vehicle to pass without striking against the scaffolding, which the defendant knew, and although it was the duty of the defendant to so operate the vehicle that it should not come in contact with the scaffolding, the defendant, A. T. Willett Company, so carelessly and so negligently drove its vehicle that it struck the scaffolding and as the result of its negligence Anderson—who was at that time in the exercise of ordinary care—was thrown off and killed.

To the amended declaration, the defendant, the A. T. Willett Company, pleaded the statute of limitations, setting up that the cause of action in the

amended declaration is different from the cause of action in the original declaration, and that the cause of action in the amended declaration did not accrue within one year prior to the filing of the amended declaration. To that plea the plaintiff filed a demurrer, which was sustained by the court. The court sustained demurrers to both the pleas of *puis darrein continuance* and *res adjudicata*. There was a trial with a jury and a verdict in favor of the plaintiff in the sum of $10,000. Motions on behalf of the defendant for a new trial and in arrest of judgment were overruled and judgment entered on the verdict. From that judgment this appeal was taken.

The evidence shows that about ten or eleven o'clock a. m., on March 21, 1917, while Christ Anderson, Joe Carmody, Ole Anderson and Arthur Knapp, structural iron workers employed by the Chicago Great Western Railroad Company, were working on a scaffolding suspended from the Polk street viaduct over a part of Franklin street, in the City of Chicago, the top of a covered wagon, which was being driven north on the east side of Franklin street, struck the scaffolding, causing Christ Anderson to fall to the ground and suffer injuries from which he shortly thereafter died.

The errors relied upon for a reversal are as follows: First, that the action of the trial court at the first trial, in directing a verdict for the Great Western Railroad Company, and other codefendants, then and there of necessity decided that the defendant, the A. T. Willett Company, was not guilty of the combined and concurrent negligence charged in the original declaration; second, that the amended declaration, filed more than four years after the accident, stated a new cause of action and was barred by the statute of limitations; third, that under the amended declaration a verdict should have been directed for the defendant because of the failure of the plaintiff to prove that the plaintiff's intestate was not operating

under and subject to the Illinois Workmen's Compensation Act; fourth, that the undisputed evidence showed that plaintiff's intestate was guilty of gross contributory negligence, which would preclude a recovery by the plaintiff; fifth, that there was no competent evidence that the wagon involved in this accident was being operated by the A. T. Willett Company, and that manifestly the greater weight of the evidence showed that the wagon in question was not operated by said company; and sixth, that the damages are excessive.

First. This contention involves the defendant's two pleas of *puis darrein continuance* and *res adjudicata*. It is our opinion that neither of those pleas was good, for the reason that what had transpired, and which was set up in both pleas, neither abated the suit as to the present defendant, nor adjudicated the plaintiff's claim against it, the defendant. It is not charged in the original declaration that when Anderson was thrown to the ground from the scaffolding that the present defendant and the former defendants were "jointly engaged in the performance of any act which caused the injury." *Pierson v. Lyon & Healy*, 243 Ill. 370. In the first count of the declaration, for example, the Chicago Great Western Railroad Company is charged with having been engaged in the construction of a scaffolding and with the duty to exercise care in its construction, and then, regardless of its duty, with having negligently constructed the scaffolding. As to the other defendants, it is charged that they were possessed of and operated a certain horse-drawn delivery vehicle going north on Franklin street, and that it was their duty to so operate it that it should not come in contact with the scaffolding and endanger the lives of the men working thereon. It is then charged that the vehicle of the A. T. Willett Company, the Heco Envelope Company and C. Guinand, "controlled and operated by them, wrongfully, carelessly and negli-

gently struck, ran into and against the said scaffolding there.'' It is true that the declaration then charges that as a direct consequence of the various and several acts of negligence of all the defendants in combination and concurrence, the plaintiff's intestate was thrown from the scaffolding, but it is quite obvious that the declaration contains a definite description of a tort by the A. T. Willett Company itself. If the evidence would sustain the charge that the injury resulted from the negligent manner in which the servant or agent of the A. T. Willett Company or the Heco Envelope Company or C. Guinand operated the wagon, it would be sufficient to sustain a recovery, notwithstanding the allegation that the precipitation of Anderson to the street was also a result of some defect in the way in which the scaffolding was constructed. (*Pierson v. Lyon & Healy, supra.*)

The argument for the defendant is that the declaration stated the proximate cause of Anderson's death as the sole negligence of the railroad company, or the concurring negligence of the railroad company and the wagon driver. The original declaration charges the railroad company with a tort, in that it failed in its duty to provide a reasonably safe scaffolding for its employee to work upon, and charges a tort on the part of the A. T. Willett Company, Heco Envelope Company and C. Guinand, by stating that it was their duty to so operate the vehicle that it should not come in contact with the scaffolding; and by then stating that the said vehicle, controlled and operated by them, ''wrongfully, carelessly and negligently drove, struck, ran into and against the said scaffolding there.'' Undoubtedly, the plaintiff undertook in the original declaration to charge all four defendants with negligence, and to charge the railroad company with negligence in the construction of the scaffolding, and that the other defendants were negligent in the operation of the vehicle, and then to set up as a consequence of the concurrence and combination and coin-

cidence, as it is stated, the negligence of all of the defendants. But it does not follow from that, that the driving of the vehicle was not alleged as a tort, as well as the method of construction of the scaffolding. The death of Anderson may have been a direct consequence of both torts, and also a consequence of either. *Pierson v. Lyon & Healy, supra.* In *Postal Tel.-Cable Co. v. Likes,* 225 Ill. 249, the court said: "In an action *ex delicto* it is not necessary that the plaintiff prove all the material allegations of the declaration. If he prove enough of the material allegations to make out a cause of action, he is entitled to recover, even though there are other averments of the declaration which are not proved." We are of the opinion that the verdict of not guilty as to the railroad company was not equivalent to finding that the negligence charged in the declaration, as to A. T. Willett Company, was not proven. *Hopkins v. St. Louis, B. & S. Ry. Co.,* 112 Ill. App. 364. It follows, therefore, that the court did not err in its ruling on the pleas of *puis darrein continuance* and *res adjudicata.*

Second. It follows, inferentially, from the foregoing, that the plea of the statute of limitations to the amended declaration, which latter stated the duty and negligence of the sole remaining defendant, A. T. Willett Company, more in detail, was not good. The tort charged in each declaration was, as to the A. T. Willett Company, in substance, the same. As stated by Mr. Justice Holmes, in *New York Cent. & H. River R. Co. v. Kinney,* 260 U. S. 340:

"When a defendant has had notice from the beginning that the plaintiff sets up and is trying to enforce a claim against it because of specified conduct, the reasons for the statute of limitations do not exist, and we are of the opinion that a liberal rule should be applied." *Barnes v. Cudahy Packing Co.,* 228 Ill. App. 490.

Third. It is contended that the plaintiff failed to prove that Anderson was not operating under and subject to the Illinois Workmen's Compensation Act.

In the original declaration it was alleged that Anderson was operating under the Workmen's Compensation Act, and in the amended declaration it was alleged that the employment of Anderson by the railroad company was casual. Counsel for the defendant urge that it was necessary, to recover, that the plaintiff allege and prove that Anderson was not operating under and subject to the provisions of the Workmen's Compensation Act, and because of his failure so to do, the court should have granted the defendant's motion for a directed verdict. In *O'Brien v. Chicago City Ry. Co.*, 305 Ill. 244, in an exhaustive opinion by Mr. Justice Dunn, it is stated: "That the common-law right of action of an employee against any other person than his employer for negligently injuring him in the course of his employment where such other person is bound by the provisions of the Workmen's Compensation Act is abolished; that the common-law right of action of an employee against any other person than his employer for negligently injuring him in the course of his employment where such other person is not bound by the provisions of the Workmen's Compensation Act is not affected by the act but is preserved in its full extent to the employee." And, further: "The plaintiff's right of action was not founded on the Workmen's Compensation Act but on the common-law, and if the defendants had any defense under that act it was incumbent on them to plead it. * * * It was not incumbent on the plaintiff to anticipate it and meet it by a denial or avoidance." Anderson, in his lifetime, but after he was injured, presented his claim against the Great Western Railroad to the Industrial Commission, and was there allowed an award of $3,500, which was affirmed by the circuit court and subsequently reversed by the Supreme Court (*Chicago & Great Western R. Co. v. Industrial Commission*, 284 Ill. 573). In that case the Supreme Court held that the employment of An-

derson for a few days' work on a driveway being constructed from a public viaduct to the company's freight house was a casual employment within the meaning of the Workmen's Compensation Act. That, however, we do not consider as of importance in this cause. In that case there was different evidence, as well as parties. We are of the opinion, however, that the *O'Brien* case, *supra,* is express authority for the conclusion that the plaintiff's right of action was not founded on the Workmen's Compensation Act, but on the common law, and if the defendant had a defense under the act, it was its duty to plead and establish it.

Fourth. It is contended that the plaintiff's intestate was guilty of negligence which proximately contributed to cause his injuries. On the morning of March 21, 1917, Christ Anderson and some fellow workmen erected a scaffolding, which was suspended from the Polk street viaduct part of the way across Franklin street. Polk street is an east and west street; Franklin a north and south street. The scaffolding consisted of two east and west beams six feet apart, extending east over Franklin street fourteen or fifteen feet. The west end of the east and west beam to the south rested upon the stone work of the viaduct; the west end of the beam, constituting the north edge of the scaffolding, was tied up to the overhanging sidewalk by means of a rope. The east ends of both beams were held by rope, tied to the structure above. The scaffolding hung down about two feet below the viaduct itself, and below the scaffolding was the street. Across the east and west beams were three or four crosspieces two by ten, or two by twelve, eight feet long. They were not nailed down. One McEnery testified that the scaffolding was made to swing out just like a swing. After Christ Anderson, Carmody, who was the foreman, Ole Anderson and one Knapp had finished the erection of the scaf-

folding, they all mounted it, in order, apparently, to do some riveting. The work being done was in connection with the building of a structure between the Polk street viaduct and the freight house of the Chicago Great Western Railroad Company.

At or about the time the scaffolding was finished, and before going up to begin their work, Anderson and his fellow workers put up an obstruction, which they called a barricade, in the street under the scaffolding. It consisted of a chicken coop, which, according to McEnery, was five by three and a half by one and one-half feet in size. McEnery says that just before the accident he noticed a chicken coop down underneath the scaffolding, with a plank on it running east and west; that the chicken coop was on edge; that the plank extended from the west side of the street out about twelve or fourteen feet, and rested on the chicken coop. Knapp says there was a chicken coop and a plank in the street as a barricade; that the chicken coop was "almost directly underneath. If anything, a little south of the scaffold" and about eight feet from the pier; that there was a plank running from the chicken coop to the pier; that the chicken coop was on its side and was about five by three feet, and fourteen or sixteen inches the other way; that the plank was from three to five feet from the ground, one end being on the chicken coop and the other projecting down to the ground. Knapp, further, said that the plank on the chicken coop was two by eight, ten or twelve. Ole Anderson stated that the barricade under the scaffolding was made up of the chicken coop, extending out as far as the end of the scaffolding, a plank running from the pier to the chicken coop, and another plank running south about ten feet; that on the chicken coop there was a red flag, which he put up himself. On cross-examination, he stated that he put down the plank running north and south "that was the longest plank we had";

and that he put down the plank running east and west. He stated that the plank which was put on running north and south he hunted up and got himself; that it was ten or eleven or twelve feet long and the other about eight feet. He further testified that before they went up on the scaffolding when it was finished they put up the barricade. Carmody, the foreman, stated that: "I had taken a chicken coop in the morning and made a barricade against there from the west side and the east side of the driveway"; that he put the chicken coop "in the middle of the street east of where we were working, and from the chicken coop east, a two by ten-foot plank, that besides these planks Anderson went over to the other side and got hold of some kind of an old flag. He stuck it on the end of the chicken coop."

About ten o'clock of the morning in question while all four of the structural iron workers were on the scaffolding and Carmody, the foreman, was using the hammer, a wagon came from the south, the top of which struck the scaffolding and precipitated Christ Anderson to the street, as the result of which he received the injuries from which he died. Knapp testified that they were taking turns in using the hammer; that Christ Anderson was standing about six feet out from the pier; that he himself was standing about eighteen inches from the pier, and that Carmody was right at the pier, and that Ole Anderson "was kinda laying on the iron, holding it steady"; that he heard somebody shout, "Look out." Then he felt the jar of the scaffolding and saw Christ Anderson go down and just miss the wagon, which was going north; that there was nothing to the east of the chicken coop to obstruct the wagon, unless it was the teams; that the cutting off and the backing up of the rivets took place just at the time of the accident and made a great deal of noise, which could be heard nearly a block away; that the wagon drove north

about fifty or sixty or seventy-five feet and then stopped. He further stated that just before the accident Christ Anderson, standing at the right of him, was facing north; that Carmody was facing south; that Ole Anderson was looking straight down. As to traffic, he stated that there was more or less, all the time, all kinds of wagons going both ways. Ole Anderson stated that when he saw the wagon it was going north on the west side of the street: "A good speed; going fast"; that then he shouted as loud as he could, and "just as he (meaning the driver of the wagon) got to the barricade there, he hit the scaffolding and gave a bump"; that "he came along next to us, hit the barricade, and hit the plank on the chicken coop, and the wagon hit the beam underneath"; that "that knocked Christ down on his head"; that as the wagon was going on, he shouted to the rest of the boys to stop the wagon; that the road was clear on the east side; that right after the wagon had gone by, the chicken coop was all flattened down. On cross-examination he stated that, at the time, he was standing next to Carmody; that they were working together; that Christ Anderson was standing "right underneath across from the lapping of the middle beam. I think his head was up between the girders"; that he was about eight or ten feet away from the witness and Carmody to the southeast; that his back was towards the north; that the scaffolding had been up about an hour or two before the accident; that Carmody and one of the others were making a barricade while he and Christ Anderson were making the scaffolding; that he was told to put a flag on the chicken coop by Carmody. Carmody, who had been working as a structural iron worker for twenty years, and was foreman of this particular job, stated that they were making a connection of a driveway between the freight house and the viaduct, and that the hammering of the rivets could be heard a block away; that all four of them were on the scaffolding which

hung about three feet below the girders; that at the time in question he was cutting out a rivet and Ole Anderson was holding the chisel. When asked where Christ Anderson was at the time he said: "He was down on the side of the scaffold so that he could reach up with one hand so as to be clear of the blow. He would have to be down below to keep himself clear of the blow of the man with the hammer." He further stated that Knapp and Christ Anderson were to the east; that the first he knew of the wagon was when it ran into the scaffolding and pulled a plank off; that he himself had to catch on to the bottom of the girder to keep from going off; that he heard one of the men shout, and he then grabbed on to the girder; that he then saw Christ Anderson lying on the ground and the wagon going on. He further stated that afterwards when he got down he picked the chicken coop up and turned it over and the slats were all broken down "all split down the center where the wagon had run over it; that when it was put there originally it was in a good condition." One McEnery, who assisted the foreman of the Chicago Great Western Railroad Company, testified that on the morning in question while standing in the south door of the freight house he noticed the structural iron workers working at the east side of the west wall of Franklin street, and noticed the scaffolding underneath extending about twelve or fourteen feet over the street; that he saw a wagon coming from the south and going north at quite a fast trot; that it was about to hit the scaffolding when he first saw it; that one of the men shouted, and that directed his attention to the wagon more than anything else; that it knocked the chicken coop over and crushed it; and then struck the scaffolding and knocked one of the men working on the scaffolding to the ground. When asked if he saw anything else on the chicken coop, he answered, "Yes, a piece of a rag there on top of the stick there"; that its color was red.

Such is the evidence for the plaintiff. By itself, we think it is amply sufficient to justify the jury in concluding that the driver of the wagon which struck the scaffolding was guilty of negligence; and, further, that Christ Anderson at the time of the collision was in the exercise of ordinary care. It is urged on behalf of the defendant that the scaffolding was an illegal obstruction, but there is no evidence in the record that the temporary scaffolding was an illegal obstruction in the street. We are not entitled to assume without evidence that the temporary scaffolding was built there in violation of any ordinance, or in violation of the people's rights to the street. For all the record shows, the railroad may have obtained a permit or right to erect it. *Krisch v. City of Chicago,* 150 Ill. App. 197.

Further, it is urged that the scaffolding was built in a loose, flimsy, improper and negligent manner; that there was an insufficient number of crossbeams, and that they were not nailed or secured in any way except by their own weight, and that it was loosely swung on ropes, and that Anderson in going upon it and remaining there was guilty of contributory negligence. Although, when the top of the wagon struck the scaffolding, Anderson was thrown to the ground, and although the scaffolding was built in a loose way, being for temporary purposes, it does not follow, necessarily, that Anderson's participation in its construction and his being upon it at the time of the collision was evidence of any negligence on his part. We are entitled to assume from the evidence as to its construction and the evidence that it had been used for some hours before the accident, that it would have served the purpose for which it was erected without injury to Anderson or anyone else on it, had it not been run into by the wagon in question. The direct cause, then, of the precipitation of Anderson to the ground was not the way in which the scaffolding was constructed, but altogether the negligence of

the driver of the wagon. The builders of the scaffolding had taken pains to erect a barricade in the street and put a red flag of some kind on it in order to forewarn drivers. There was plenty of room remaining in the street to the east of the barricade for wagons to pass each way, even though, as the evidence shows, there may have been considerable traffic at the time. It is difficult to understand how the driver of the wagon in question was so careless as to drive into the barricade in question and into the scaffolding especially as they were on the west side of the street. It is urged that Anderson's position at the time the scaffolding was struck by the wagon was a negligent one; that he was standing up, although not working; that he was not holding onto anything, and that he, apparently, paid no attention to the cry: "Look out!" The evidence shows that the men on the scaffolding were taking turns at the work, and that just prior to the time of the collision Carmody had just relieved Knapp, and that Christ Anderson "was down on the side of the scaffolding so that he could reach up with one hand so as to be clear of the blow." Carmody said, "He (Anderson) would have to be down below to keep himself clear of the blow of the man with the hammer." Ole Anderson was, evidently, holding the chisel, and Carmody, being left-handed and the place being in the corner and requiring a left-handed man, was striking the chisel. So, it will be seen that Anderson was doing what the ordinary man would do under such circumstances, protecting himself from the danger of the work that was going on; further, that he was entitled at that time to do so, as there was a barricade below to notify drivers not to run into the scaffolding. In *Dickson v. George B. Swift Co.,* 238 Ill. 62, the court said: "While the circumstances in which a person is placed may differ and require the doing of different things for his personal safety and call for effort and circumspection proportionate to the known danger, the care demanded

is such as a person of ordinary prudence would usually exercise under the same or similar circumstances, and is nothing but ordinary care after all.''

After a careful analysis of the evidence, we are of the opinion that we are not entitled to override the verdict of the jury on the ground that the evidence shows contributory negligence on the part of Anderson, or on the ground that it clearly fails to show negligence on the part of the driver of the wagon.

Fifth. It is claimed that the plaintiff failed to prove that the wagon involved in the accident was being operated by the defendant. It is urged that the evidence as to ownership and operation was not sufficient to submit to the jury and that the verdict finding that the defendant was operating the wagon in question at the time of the accident was manifestly contrary to the weight of the evidence. The record shows that the witness McEnery, who was an assistant foreman of the Chicago Great Western Railroad Company, stated that he went over and asked the driver, to whom the wagon belonged, but when he was about to state what the driver told him, counsel for the defendant objected, and the objection was sustained. McEnery testified that he saw on the side of the wagon the name ''Heco Envelope Company'' and ''A. T. Willett Company'' on the front end, the dashboard; that it was a white canvas covered wagon. On cross-examination, when asked about his testimony before the Industrial Board some years previously, he stated that he mentioned the name of the A. T. Willett Company and called the wagon the Heco Envelope Company wagon, and stated that the name Heco Envelope Company was on the side. Carmody, the foreman in charge of the work, stated that after he got a glass of water for Anderson, he went over to the wagon to get the name; that the wagon was of a light color; that on its side were the words, ''Heco Envelope Company.'' When asked, ''Did you notice a name on the front?'' he answered, ''I made

it my business to go to the front of the wagon." When asked, "What did you see there?" he answered, "At that time I couldn't make it out. It was A. T. Willett Company on the front board." Carmody was also asked on cross-examination about his testimony before the Industrial Board, but there was no special discrepancy between his testimony before the Industrial Board and at the last trial, as he may well have called it before the Industrial Board "a Heco wagon" from the fact that he said he saw "Heco Envelope" on the side of the wagon.

McEnery and Carmody are the only witnesses who testified that the wagon which struck the scaffolding had the words "A. T. Willett Company" in front, and the "Heco Envelope Company" on the side. No other witnesses were called who saw the wagon at the time of the accident and who testified to the names on the wagon itself. A number of witnesses were called in regard to the teaming business of the defendant. Notwithstanding the testimony of McEnery and Carmody, which, considering the verdict, the jury undoubtedly believed, it is claimed in behalf of the defendant that the verdict was contrary to the weight of the evidence as to the ownership and operation of the wagon. But there is considerable evidence tending to show that the defendant had wagons with the name "A. T. Willett Company" in front and "Heco Envelope Company" on the side. One Tebo, treasurer of the Heco Envelope Company, testified that in February, March and April, 1917, Guinand had the teaming contract with the Heco Envelope Company; that the A. T. Willett Company also did teaming for that company, and that a certain document dated March 3, 1917, was a bill from the A. T. Willett Company for cartage for the Heco Envelope Company; that he, himself, audited the bill and signed the check to pay for it. He further stated that Willett's name was on all his wagons, and that when Willett had the Heco Envelope Company contract,

the wagons were large covered wagons, with the words, "Heco Envelope Company," and the company's telephone number on the side, and "A. T. Willett Company" on the front. When he was asked, "Did you see those wagons in use during the months of January, February and March?" he answered that he did, and when asked, "Was the lettering just the same during those months?" he answered, "Yes," and when asked, "Had they been repainted?" he answered, "No." He further stated that the last time he saw those wagons with the Heco Envelope Company and A. T. Willett names was in May, 1917. One Cook, who worked for the Heco Envelope Company on March 21, 1917, stated that Guinand, with two wagons, did teaming for that company in March, 1917, but that at times the Heco Envelope Company called the Willett Company, and in January, February and March, 1917, "It might have been once or twice or three times a day, or that many times a week." He further stated that prior to January 1, 1917, when the defendant had the contract to do teaming for the Heco Envelope Company, they devoted two wagons entirely to the Heco Envelope Company business; that they were new three-quarter wagons and painted white, with "Heco Envelope Company" gilded on the side and the "A. T. Willett Company" on the front. He further stated that he heard of the accident in question on the afternoon of March 21, 1917, and that he saw the wagons after that many times, and that the lettering on them was not changed for a long time afterwards. When asked if the Heco Envelope Company had any wagons of their own, he answered, "No, their work is all done on contract." One Gabriel, a teamster for Guinand and who did work for the Heco Envelope Company, stated that in January, February and March, 1917, he saw wagons hauling material from the Heco Envelope Company; that they were white with "A. T. Willett" on the front and "Heco Envelope Company" on the curtain, and on the side-

board, and with the Heco Envelope Company telephone number. He further testified that on the afternoon of March 21, 1917, he heard of an accident, and that two days after that he saw one of the Willett wagons at the Heco Envelope Company; that it had "A. T. Willett" on the front dashboard and the Heco Envelope Company on the curtain panel. On cross-examination he testified that while he worked for Guinand the latter owned two one-horse wagons, each marked on the side, "Heco Envelope Company," and with no other marks, and that one was green with red running gear, and the other dark yellow; that the last time he saw the Willett wagon was two or three days after March 21, 1917, when he was talking to the driver. One Golf, who worked for Guinand in January, February and March, 1917, hauling for the Heco Envelope Company, testified that Guinand had two wagons; that after he went to work for Guinand he saw the Willett Teaming Company doing teaming in January, February and March for the Heco Envelope Company with a white wagon; that it had "A. T. Willett Teaming" on the dashboard in black lettering; that on March 22, 1917, he heard of an accident; that several weeks after that he saw a "Heco Envelope wagon—Willett Teaming Company's wagon on the street," after the 21st of March, which was painted white, and was the same wagon he had seen in January, February and March, 1917. One Guinand, who was in the teaming business, and employed both Golf and Gabriel, stated that in January, February and March, 1917, he had two wagons he used for the Heco Envelope Company, one with a yellow body and red gear and the other a green body and red gear with black curtain; that he heard of an accident on March 21, 1917. On cross-examination, he stated that he drove a wagon himself in January, and probably a week in February, 1917; that during the month of January, 1917, he had a wagon that belonged to the Willett Teaming Company, a white wagon that he

drove himself, because one of his wagons was in the shop, and that the Willett Company let him take one of its wagons for a week or two; that the white wagon had "Willett Teaming Company'' under the footboard, and also had the Heco Envelope Company's name. It would seem, therefore, from the foregoing, that if the jury believed the testimony of McEnery and Carmody, as far as their descriptions of the wagon which collided with the scaffolding are concerned—and it would seem to be difficult for them to do otherwise—and, added to that, a belief in the testimony of Cook, Golf, Gabriel, Tebo and Guinand, which latter testimony tends to show that in March, 1917, the defendant did haul for the Heco Envelope Company, with a white wagon such as was described by McEnery and Carmody, there was ample evidence to support the conclusion of the jury. But the defendant offered evidence on that subject, and, it is claimed, cast such doubt upon the defendant's ownership and operation of the wagon in question that the verdict of the jury was clearly against the weight of the evidence.

H. L. Willett, secretary and treasurer of the defendant company, testified that the defendant did some hauling for the Heco Envelope Company in March, 1917. When asked if it amounted to two or three loads a day, he answered, "We did all their work, their extra business." On cross-examination the witness was shown a bill labeled, "A. T. Willett Company debtors to the Heco Envelope Company," and he said it was a bill which the defendant rendered to the Heco Envelope Company. When asked whether it refreshed his recollection as to whether or not the defendant made deliveries for the Heco Envelope Company on March 21, 1917, he answered, "I can testify that that is a bill of the A. T. Willett Company." When asked, "Well, your bill does show you made two deliveries for them on March 21, 1917, doesn't it?" the question was objected to, and the

objection sustained.   Considerable evidence was offered by the defendant tending to show that it had two covered wagons numbered 21 and 26, which were used in 1916 by the defendant in hauling for the Heco Envelope Company, and that they had the monogram of Willett Company in front.   One Jones, foreman of the A. T. Willett Company, testified that the defendant did no hauling for the Heco Envelope Company in 1917, with either of its wagons numbered 21 and 26; that they used their regular type of wagon, which has no top.   W. D. Willett, president of the defendant company, stated that no hauling was done for the Heco Envelope Company in 1917 in wagons numbered 21 and 26, or any wagons of that type; that the wagons they did use for the Heco Envelope Company were regular large wagons with red body and white gears, and no top; that no wagons were used by the defendant at any time during January, February or March, 1917, bearing the name "Heco Envelope Company."   H. L. Willett, secretary and treasurer of the defendant company, stated that after January 1, 1917, they lost their contract for hauling with the Heco Envelope Company, but that in 1916 it did hauling for the Heco Envelope Company with two wagons numbered 21 and 26, one of which had its top painted green and the gear red, the other of which was painted white; that both of them had "Heco" on the side and the monogram "Willett Teaming" under the driver's seat, but that during 1917 neither of those wagons was used in doing any hauling for the Heco Envelope Company after January, 1917; that the regular stake wagons with red top and cream-colored gear were used; that those wagons have no top; that the defendant had altogether from 150 to 175 wagons, made up of several types, 95 per cent of which were stake wagons.   One Metzler, who did painting for the defendant company, stated that he repainted the wagons numbered 21 and 26—painted out the sign "Heco Envelope Company" on them.   Two bills sent

to A. T. Willett Company by J. Metzler & Sons Company, one dated February 24, 1917, and one dated March 5, 1917, refer, respectively, to wagons numbered 26 and 21. The bill concerning wagon No. 26 contains an item for painting roof and curtains and screens, $20, and the bill concerning wagon No. 21 has a last line as follows: "Painting lettering off panels and curtains N/C." From this it will be seen that some of the evidence on the part of the defendant is in conflict with some of the evidence offered on behalf of the plaintiff as to the ownership of the wagon in question. Quite obviously, the determination of the jury as to the ownership and operation of the wagon in question is not clearly against the weight of the evidence. It is not denied that the defendant did some hauling for the Heco Envelope Company in March, 1917, about the time of the accident, and the evidence strongly supports the conclusion that a wagon or wagons of the defendant with "Heco Envelope Company" on the side and the defendant's name in front were used by the defendant to do hauling in March, 1917, and that, taken in conjunction with the testimony of Carmody and McEnery, together with the evidence of Cook, Golf, Gabriel, Tebo and Guinand, leads to the conclusion that it would be unreasonable for this court, especially as we have not the opportunity which the jury had to see the witnesses, to hold that the verdict was clearly against the manifest weight of the evidence.

For the defendant it is urged that wagon No. 26 was repainted and relettered prior to February 24, 1917, and that wagon No. 21 was painted by Metzler prior to March 5, 1917, and that as there was testimony on the part of the defendant that wagons numbered 21 and 26 were the only colored wagons, it follows, as a consequence, that it could not have been either of those wagons which struck the scaffolding. But the jury in reaching their verdict may not have believed that evidence, especially as there is testimony that

the wagon which struck the scaffolding was a white wagon and had both names on it; and, also, evidence such as that of Golf that the white wagon with both names on it was being used by the defendant both before and after the time of the accident.

In *Edgeworth v. Wood,* 58 N. J. L. 463, where the evidence showed that the plaintiff was injured by being run over in a public street by a wagon drawn by two horses, the court said:

"All the witnesses who saw the accident and noticed the wagon which ran over plaintiff united in declaring that it was painted as were the wagons of the company, and that it was marked with the company's name and device. Considering the great improbability that any other owner of a wagon would thus paint and mark it, a plain inference could be drawn from the evidence that the wagon in question was in the ownership of the company. If that inference be drawn, it is sufficient to establish prima facie that the wagon being owned by the company was in its possession, and that whoever was driving it was doing so for the company." *Vonderhorst Brewing Co. v. Amrhine,* 98 Md. 406.

In the instant case there is more evidence than the mere identification of the wagon by its lettering, which would by itself make out a prima facie case. See *East St. Louis Connecting Ry. Co. v. Altgen,* 210 Ill. 213; *Ryan v. Baltimore & O. R. Co.,* 60 Ill. App. 612; *Pittsburgh, Ft. W. & C. Ry. Co. v. Callaghan,* 157 Ill. 406.

There is evidence that the defendant did hauling for the Heco Envelope Company—did its extra work; had one or more of its wagons painted similar to the one described by McEnery and Carmody, and did hauling for the Heco Envelope Company about the time of the accident. Taking all the evidence together, and after considering it with great care, we are impelled to the conclusion that it would not be reasonable for us to hold that the verdict as to ownership and operation was manifestly against the

weight of the evidence. *Kirn v. Chicago Journal Co.,* 195 Ill. App. 197.

Sixth. It is urged by counsel for the defendant that the verdict of $10,000 is excessive. Ida Anderson, forty-nine years of age, widow of Christ Anderson, the deceased, testified that he was fifty years of age at the time of his injury; that he was a structural iron worker; that he brought home from $35 to $50 and sometimes $65 and $70 a week; that he worked nearly all the time, and was seldom idle; that he was a sober and industrious man; that the money was brought home to pay the bills, to educate the children and dress them; that there were three children dependent upon him at the time, Roy, nineteen years of age, William, thirteen, and Norman, ten.

In case of a husband's death, through another's negligence, such damages are allowed as are equivalent to the pecuniary loss thereby sustained by the decedent's wife and children; the amount, in all probability he would have earned by his work during the rest of his life, estimated as probable, and which would have gone to the benefit of his wife and children. The verdict does not show that it was increased by reason of any prejudice or passion of the jury, nor that it was the result of erroneous instructions of the measure of damages. The verdict is the maximum allowed under the statute. Considering his age, his employment, the service he rendered his family, and the times, we know of no reason why we should conclude that the judgment is excessive. *Posch v. Chicago Rys. Co.,* 221 Ill. App. 241; *Devine v. Chicago, R. I. & P. Ry. Co.,* 185 Ill. App. 488; *Benson v. Chicago City Ry. Co.,* 208 Ill. App. 615; *Waiswila v. Illinois Cent. R. Co.,* 220 Ill. App. 113.

For the foregoing reasons and finding no substantial error in the record, the judgment will be affirmed.

*Affirmed.*

O'CONNOR, J., concurs.

MR. JUSTICE THOMSON dissenting: I am unable to

concur in the foregoing decision. In my opinion, the plea of the statute of limitations, interposed by the defendant, to the plaintiff's amended declaration was a good plea, and therefore I believe the trial court erred in sustaining plaintiff's demurrer to that plea.

To set forth a good cause of action, a plaintiff must allege, not only that the defendant has been guilty of certain alleged acts of negligence, but also that such negligence caused the injuries complained of or the damages sought to be recovered. In the four counts of the original declaration, filed by the plaintiff in the case at bar, he complained of the concurrent negligence of the then defendant, railroad company, in maintaining an unsafe scaffold and of the defendant Willett Company in so negligently driving its wagon as to strike against the scaffold. He did not allege that the *cause* of the injuries, resulting in his intestate's death, was the negligence of the railroad company or that of the present defendant, nor that it was the negligence of both said parties acting at the same time but independently of each other, but he alleged that the cause of such injuries complained of was a result "of the concurring negligence of all of said defendants" (including others who were parties defendant at that time). In other words, the original declaration did not allege that the cause of the injuries was the alleged negligence of the Willett Company, except as that was one element of "the concurring negligence of all of said defendants." He alleged that the injuries complained of were the result and consequence of such "concurring negligence" of all the then parties defendant. It was neither alleged nor intimated that the negligence of the Willett Company alone was the cause of the injuries complained of. The allegations of the original declaration were in fact to the contrary. The gravamen of the charge was the concurrence of the acts of negligence of all the various defendants, the allegation being that by a combination of all the acts complained

of, the injuries complained of were caused or brought about.

There was neither allegation nor intimation in the original declaration that the alleged negligence of the Willett Company would have caused the injuries complained of if the scaffold had been properly constructed. The substance of the charge in that declaration was that the scaffold, on which the defendant was required to work, was defective and that the railroad company was negligent in that regard and in failing to notify the deceased of approaching danger and that this negligence on the part of that defendant, concurring with the alleged negligence of the Willett Company, with reference to the driving of the wagon, caused the injuries complained of. As was said by the court in *Frank Parmelee Co. v. Wheelock*, 127 Ill. App. 500, aff'd 224 Ill. 199: "It is one thing to charge negligence in both defendants and another to charge that the negligence of one concurred with that of another in causing an accident." In the original declaration filed in the case at bar, the plaintiff did not charge that the injuries complained of were caused by the negligence of the railroad company and the Willett Company,—it did not make out a case against each of those defendants independently of the other, but it alleged that the negligence of each defendant, operating and concurring with that of the others, was the cause of the injuries complained of. The plaintiff could not have recovered under that declaration by proving merely the negligence alleged against the Willett Company. Before he could have recovered under the allegations he made in that declaration, he would have to prove the negligence alleged against all the defendants. *Cleveland, C., C. & St. L. Ry. Co. v. Eggmann*, 71 Ill. App. 42; *St. Louis, B. & Suburban Co. v. Hopkins*, 100 Ill. App. 567. The court held the converse of this rule in *Frank Parmelee Co. v. Wheelock*, 127 Ill. App. 500, where, it was pointed out, that "a complete case

was stated in the declaration against each defendant." It is not pretended that in the case at bar a complete case was stated in the original declaration against the Willett Company, and it must be conceded that a verdict against that defendant alone, on that declaration, could not have been sustained. It was doubtless a realization of that very fact which led the plaintiff to file his amended declaration, wherein, for the first time, he stated a complete case against the Willett Company. The plaintiff might have sustained his case, as declared on in the original declaration, by showing that the Willett Company was guilty of negligence and that while such negligence was not sufficient of itself to cause the injuries complained of and while it did not so cause those injuries, the railroad company and the other parties then defendant were also guilty of negligence and their negligence combining and concurring with the negligence of the Willett Company, caused the injuries. Obviously such proof could not sustain the amended declaration which alleged that the negligence of the Willett Company alone caused the injuries. And it is equally obvious that such proof as would sustain the amended declaration could not sustain the original declaration. Such tests have frequently been applied in order to determine whether an amended declaration states a cause of action different from and other than that set forth in an original declaration. *Wabash R. Co. v. Barrett,* 117 Ill. App. 315; *Chicago Terminal Transfer R. Co. v. Young,* 118 Ill. App. 226.

In my opinion the case of *Pierson v. Lyon & Healy,* 243 Ill. 370, cited by the defendant, is clearly not in point. In that case the declaration charged Lyon & Healy with certain negligent acts and it also charged the City of Chicago with other negligent acts, and it charged that the injuries there complained of were caused by the negligent driving of the Lyon & Healy truck "and" as a result of the existence of a hole in the pavement due to the negligence of the

city. It was contended that the declaration charged that the cause of the plaintiff's injury "was the combined and concurrent negligence of" both defendants. The court expressly held that it did not and said that the rule invoked was not applicable to the declaration there involved. It was pointed out that while the declaration did charge negligence against both defendants, it made out a complete case against each of them independently of the other and did not charge concurrent negligence nor allege that the injuries complained of were caused by a combination of the various acts of negligence charged against both defendants. The Supreme Court, in their opinion in that case, did use the sentence referred to and adopted in the foregoing majority opinion, reading: "It is not alleged in the declaration that appellant and the City of Chicago were, at the time of appellee's injury, jointly engaged in the performance of any act which caused the injury." But surely that does not mean that before it can be said that a declaration charges joint or concurrent negligence in several defendants, it must allege that they were jointly engaged in the performance of some act which caused the injury. It seems to me to be very clear that a declaration may allege that some act of omission (let us say) in one defendant was negligent and that an act of commission in another defendant was also negligent and that, as a result of both of them, acting together and concurrently, certain injuries were caused. Such a declaration would allege a good cause of action (assuming it to contain the other necessary allegations as to due care, and so on) against *both* defendants referred to but not against *each* of them, without the other. And yet it does not allege that both defendants were jointly engaged in the performance of any single act causing the injury. In my opinion the declaration just referred to as an illustration is the declaration involved in the case at bar, and the declara-

tion involved in the *Lyon & Healy* case was entirely different.

In the case of *Postal Tel.-Cable Co. v. Likes,* 225 Ill. 249, cited in the *Lyon & Healy* case, it clearly appears from the language of the opinion, on page 264, that the declaration there involved contained complete allegations of negligence against the single defendant there found guilty, in separate counts and in addition to and quite apart from those charging that the injuries were caused by "the joint and concert negligence of both defendants." Such is not the situation presented by the declaration involved here, and, therefore, that case also does not apply.

The case of *Linquist v. Hodges,* 248 Ill. 491, is another case which has come to our attention as being one which expresses the contention of the plaintiff in the case at bar. In my opinion that case also may clearly be distinguished from the case at bar. That was a tort action against several defendants, charging joint liability and charging the defendants with jointly injuring the plaintiff, and the court held that although all of the defendants but one were dismissed out of the case, the plaintiff might recover against the remaining defendant alone. The court there said in the course of its opinion: "If those averments of the declaration be eliminated from each of the counts which refer to those defendants who were dismissed out of the case, by disregarding such averments as surplusage, there clearly remains sufficient in each of the counts of the declaration to state a good cause of action" against that defendant alone against whom the judgment was recovered. That is not at all the situation presented in the case at bar, where there would not have been sufficient remaining to make out a case against the Willett Company, if all the averments of the declaration, referring to the railroad company and the other defendants, had been eliminated from the original declaration as surplusage. The case last referred to cites, among others,

*Pierson v. Lyon & Healy, supra; Postal Tel.-Cable Co. v. Likes, supra,* to both of which reference has already been made, and also the case of *Lasher v. Littell,* 202 Ill. 551. The latter case also, in my opinion, may be distinguished from the case at bar, for that was a case in which the declaration charged that a defendant had conspired with certain other defendants to prosecute the plaintiff maliciously. All the defendants but one were dismissed out of the case, and the court upheld a judgment against the remaining defendant, the court pointing out that in all cases involving a charge of conspiracy the gist of the action was not the conspiracy but the damage caused by the wrongful acts of the defendants, and that, as a matter of pleading, the charge of conspiracy was mere surplusage. The substance of that decision was to the effect that notwithstanding the charge of conspiracy and the dismissal of all the defendants but one, the plaintiff might proceed to trial under the original declaration, as against the remaining defendant, and recover a judgment based on such acts as he might prove had been committed by the remaining defendant.

Another case relied upon by the plaintiff, and referred to in the majority opinion, is *Hopkins v. St. Louis, B. & S. Ry. Co.,* 112 Ill. App. 364. That case had previously been before the Appellate Court and the first decision appears in 100 Ill. App. 567. The case was originally brought against two defendants. In the second opinion, the court in referring to the case when first presented to the Appellate Court said: "As the case then stood, the declaration was against the present appellee and another corporation, charging joint and concurrent negligence. The form in which the negligence was charged made proof of concurrence necessary to a recovery against either, and such proof not having been made, the judgment of the trial court was reversed and the cause remanded, for

that and other errors discussed in the opinion.'' When the case went back for another trial, an amended declaration was filed against the defendant corporation, which had been found guilty on the first trial. It was then contended, as it is in the case at bar, that the amended declaration stated a new cause of action, and a plea of the statute of limitations was filed, to which the plaintiff demurred. The trial court overruled the demurrer and the plaintiff electing to stand by it, judgment was rendered against him. On appeal to this court it was held, in 112 Ill. App. 364, that the amended declaration did not state a new cause of action, and the judgment of the trial court was again reversed and the cause was again remanded.

The defendant in the case at bar attempts to distinguish that case from the one now before us by pointing out that in the opinion filed in connection with the second decision of the case cited, the court referred to the fact that the amended declaration there involved amended the allegation contained in the original declaration as to the joint and concurrent negligence of the two defendants, but added that the allegation thus amended was ''wholly immaterial when omitted, and would have been wholly immaterial in the former case (that is in the original declaration) if it had not been made material by being alleged, and by the form and connection in which it was there alleged.'' Counsel for the defendant in the case at bar then point out that if the allegation as to jointure and concurrence had been omitted from the original declaration involved here, there would have been no allegation of causation remaining, and adds that apparently in the *Hopkins* case, in addition to the allegation of jointure and concurrence, there was an allegation that one defendant alone caused the injuries. I am of the opinion that the *Hopkins* case may not be thus distinguished from the case at bar. It is true that in that case, as counsel for the defendant in the case at bar point out, and as is clear from

an examination of the opinion filed upon the occasion of the first decision of the case, in 100 Ill. App. 567, the original declaration there involved did set up a complete case against one of the defendants and that case might be distinguished from the case at bar, if the defendant against whom a complete case was set up in the original declaration there involved had been the defendant who remained in the case and against whom the amended declaration was filed in that case. But it appears from an examination of the opinion in the *Hopkins* case that while the declaration there involved did set up a complete cause against one of the defendants, it was that one who was found not guilty on the first trial of the case. It further appears that in the original declaration involved in that case, after setting up a complete case against the defendant who was found not guilty, the declaration continued with a charge that the other defendant (the one which was found guilty) was guilty of negligence which "contributed to and concurred with the negligence of the other defendant" in causing the plaintiff's injury. Thus it will be seen that the only negligence charged in the original declaration in that case, against the defendant found guilty, was contributing and concurring negligence, while the defendant against whom a complete case was set up was found not guilty and eliminated from the case. On the first appeal it was held that, as to the defendant found guilty, the declaration charged joint and concurrent negligence and that while it was usually true that actions against tort-feasors may be either joint or several, and that there may be recovery against one or more and a failure to recover against others in the same suit, still that does not relieve the plaintiff from proving joint and concurrent negligence, if he sets that up in his declaration, as he did in that case, and the court further held that such joint and concurrent negligence had not been proven, inasmuch as one of the defendants had been found not guilty, and yet the

court, in the second decision of the case, sustained an amended declaration against the defendant alone who had been found guilty in the first trial and had been charged in the original declaration only with contributing and concurring negligence. It seems to me, therefore, that the decision in that case, appearing in 112 Ill. App. 364, supports the plaintiff's contention here and is in conformity with the foregoing majority opinion. It seems to me that the unsoundness of the reasoning adopted in the majority opinion and set forth in the *Hopkins* case, which the majority opinion follows, is apparent in what the court says in the *Hopkins* case itself in the second decision. If, in fact, the amended declaration filed in that case did not state a new cause of action, it is difficult to see why a judgment recovered against the only defendant named in the amended declaration should not be permitted to stand, although based on the original declaration, the theory of the court being that the amended declaration was merely a restatement of the same cause of action set up in the original declaration.

But, while I am of the opinion that the *Hopkins* case may not be distinguished from the case at bar, I am not able to follow the reasoning of the court, laid down in the second decision of that case. In other words, where a declaration sets up a complete cause of action in tort against A and then proceeds to allege that B was also guilty of negligence which contributed to and concurred with the negligence of A, that an amended declaration, filed after the period of the statute of limitations has run, eliminating A and alleging that the injuries complained of were caused solely by the negligence of B, sets up a new cause of action and is subject to a plea of the statute of limitations. It must be remembered that the case at bar does not present merely an original declaration, setting up joint liability, followed by an amended declaration against one of the original defendants only,

230    APPELLATE COURTS OF ILLINOIS.

as against whom the original declaration set up a good cause of action apart from the other defendants. The case at bar is a very different case from that. As stated before, the original declaration involved here did not state and did not purport to state a cause of action against the Willett Company alone, and allege merely that the Willett Company, by reasons of the premises, was jointly liable with the other defendants; but it set up that the railroad company was guilty of negligence, which was specified, and that the Willett Company was guilty of negligence, which was specified, and that the two, acting together and concurrently, were the cause of the injuries complained of.

For the reasons I have stated, I am of the opinion that the amended declaration, charging negligence against the Willett Company alone and stating that it, in and by itself, was the cause of the injury complained of, sets up a different cause of action from that which was set forth in the original declaration, and, therefore, that it was subject to the demurrer filed against it by the defendant.